GEORGE T. HALL ET AL., APPELLANTS, V. EDWARD HOOPER ET AL., APPELLEES.

FILED FEBRUARY 4, 1896.    No. 6028.

1. Quieting Title: PARTIES. Any person claiming title to real property in this state, whether in or out of possession, may maintain an action against any person or persons claiming adversely, for the purpose of determining such estate and quieting title. *Foree v. Stubbs*, 41 Neb., 271, followed.

2. ——: ——. Such an action may be maintained by a remainder-man during the continuance of the particular estate.

3. Execution: VOID DECREE: QUIETING TITLE. Where a judicial sale and conveyance of land have been made under a void decree, a court of equity will not give affirmative relief to the person whose estate was sought to be divested unless he shows some equitable interest in the land. *Hughes v. Housel*, 33 Neb., 703, followed.

4. Mortgages: RIGHTS OF HOLDER OF NOTES. The assignee of notes secured by mortgage, even though the assignment be without consideration, succeeds to the right of the mortgagee to have redemption made as a condition of canceling the mortgage. *Loney v. Courtnay*, 24 Neb., 580, followed.

5. Principal and Agent: RATIFICATION. A principal who ratifies a contract made for him by another must adopt all the instrumentalities employed by such agent to bring it to a consummation. *Joslin v. Miller*, 14 Neb., 91, followed.

6. ——: ——: HUSBAND AND WIFE. Therefore, where A purchased land and caused it to be conveyed to his wife, he giving at the time of the conveyance a mortgage in own name upon the land to secure a portion of the purchase money, the wife, by accepting the deed, adopted also the mortgage. It became an equitable mortgage upon the land.

7. ——: ——: ——. The fact that the husband was not authorized in writing to act in the matter is immaterial. The statute of frauds is not applicable to such a case.

8. **Estoppel:** CREDITORS' BILL: MORTGAGES. A conveyance was made which was void as against creditors, and, as part of the same transaction, a purchase-money mortgage was executed on the same land. A creditor caused the land to be subjected to the payment of his judgment. A portion of the land was sold, completely satisfying the judgment. The former creditor afterwards became the assignee of the mortgage. *Held*, That he was not estopped by the creditors' bill and proceedings thereon from foreclosing the mortgage upon that portion of the land which had not been subjected to the payment of his judgment.

9. **Quieting Title:** MORTGAGES: OFFER TO REDEEM. A mortgagor, in order to remove the cloud cast upon his title by a sheriff's deed executed in pursuance of a void foreclosure, must offer to pay what is equitably due under the mortgage.

10. ——: ——: ——. When a mortgagor seeks such affirmative relief he is not relieved from the necessity of offering to redeem by the fact that the statute of limitations has barred the mortgagee's right to foreclose. *Merriam v. Goodlett*, 36 Neb., 384, followed.

11. **Limitation of Actions:** MORTGAGES: BILL TO REDEEM. The statute of limitations begins to run against a bill to redeem from the time when, the mortgage having matured, the mortgagee enters into open and notorious possession of the premises under claim of ownership.

12. ——. Whether the period of limitations in such case is four or ten years is not decided.

13. **Adverse Possession:** MORTGAGES: SHERIFFS' DEEDS. A mortgagee, under a mortgage purporting to incumber the fee, sought to foreclose against the fee, bought the land at the foreclosure sale, and the sheriff's deed purported to convey the fee and was immediately recorded. He entered into actual possession of the land. The foreclosure was void. The plaintiffs undertook to annul the deed. They were remainder-men after a life estate, the tenant of which was not a party to the suit. By their petition they admitted that the mortgagee had by the proceedings obtained the life estate; but the proof showed that the proceedings were void as to the life tenant as well as to the plaintiffs. *Held*, That the mortgagee's possession was adverse to the plaintiffs, and not merely for the life estate.

14. **Limitation of Actions**: MORTGAGES: OFFER TO REDEEM. The plaintiffs having undertaken to have both the mortgage and proceedings to foreclose it declared void, and the court having determined that while the foreclosure was void the mortgage was not, an opportunity to amend the petition by offering to redeem was denied, the proof showing that the right to redeem was barred by the statute of limitations.

APPEAL from the district court of Hall county. Heard below before HARRISON, J.

The issues are stated by the commissioner.

*R. C. Glanville, R. R. Horth,* and *Charles G. Ryan,* for appellants.

References as to plaintiffs' right of action: 2 Washburn, Real Property, p. 495*; Tiedeman, Real Property, sec. 715; *Mettler v. Miller,* 129 Ill., 630; 1 Am. & Eng. Ency. Law, 237; *Ainsfield v. Moore,* 30 Neb., 385.

Reference as to construction and effect of the deed to Mrs. Milton S. Hall: *Dworak v. More,* 25 Neb., 735.

References as to the effect of judicial sales and sheriffs' deeds: *Lang v. Hitchcock,* 99 Ill., 550; *Mettler v. Miller,* 129 Ill., 630; *Kirk v. Bowling,* 20 Neb., 260; *Barrett v. Stradl,* 41 N. W. Rep. [Wis.], 439.

*Abbott & Caldwell, contra.*

References: *McKesson v. Hawley,* 22 Neb., 692; *Boyd v. Blankman,* 29 Cal., 19; *Moore v. Miller,* 43 Fed. Rep., 347; *Pope v. Hooper,* 6 Neb., 178; *Castner v. Walrod,* 83 Ill., 172; *Carson v. Murray,* 3 Paige Ch. [N. Y.], 483; *Blain v. Harrison,* 11 Ill., 384; *Learned v. Cutler* 18 Pick. [Mass.], 9; *Forbes v. Sweesy,* 8 Neb., 520.

12

IRVINE, C.

For a proper understanding of this case a statement of the substance of the pleadings is necessary. The appellants, George T. Hall and Mary J. Monroe, in their petition allege that one Mrs. Milton S. Hall was in her lifetime the owner in fee of certain land in Hall county; that she died seized of said land November 24, 1871, leaving surviving her her husband, Milton S. Hall, who is still living, and the plaintiffs, her only children by said Milton S. Hall; and that thereby Milton S. Hall became seized of an estate by curtesy in said premises, and the plaintiffs became owners in fee of the remainder. The petition then alleges certain proceedings and deeds in pursuance thereof, whereunder the defendant Hooper claims to have divested the estate and become the owner in fee of the land. These proceedings are pleaded at length. It is then alleged that all these proceedings were void as to the plaintiffs and their mother for want of jurisdiction of the person, and that they were of no effect to pass any title to Hooper except the life estate of Milton S. Hall, which has not yet been determined. The plaintiffs also aver that they had no notice of the claim of Hooper to the fee of the land until within two years of the commencement of the action. They allege that said proceedings and deeds constitute a cloud upon their title, and pray that the deeds be adjudged void in so far as they purport to convey the estate of the plaintiffs, and that title to the remainder be quieted in plaintiffs. There are certain other averments against the other defendants claiming under a mortgage from Hooper and leading to a prayer that this mortgage be set

aside, but these averments it will not be necessary to notice, as the decision of the case must be based entirely upon the issues between the plaintiffs and Hooper.   The answer alleges possession and the exercise of acts of ownership by Hooper since 1872; denies that Mrs. Hall was ever the owner or in possession of the land; denies that the deed under which she claims was ever executed or delivered to her, or that she ever paid any consideration for the property; and, in short, denies most of the allegations of the petition, and closes with a plea of the statute of limitations.

From the pleadings and evidence the facts in regard to the title appear as follows: In 1868 Hooper commenced an action against Milton S. Hall for the recovery of a debt.   A writ of attachment was issued and one Peterson was garnished. Peterson, it would be inferred, never answered the order of garnishment, but in 1869, he being indebted to Hall in about the sum of $1,200, conveyed the land in controversy by deed running to "Mrs. Milton S. Hall," and at the same time, and as part of the same transaction, a mortgage was executed to Peterson by "M. S. Hall" to secure notes amounting to $1,006, that being the difference between the estimated value of the land and Peterson's debt to Hall.   Mrs. Hall was not present, and it is perfectly clear that the transaction was one between Hall and Peterson for Hall's benefit, Mrs. Hall having no interest therein. Hooper proceeded to judgment in his action against Hall, and caused execution to be levied on the land.   He then, in September, 1870, began an action in the nature of a creditors' bill, naming as defendants M. S. Hall, Mrs. Milton S. Hall, and Peterson.   The petition in that case alleged the

recovery of the judgment and levy of execution, alleged the attachment and garnishment of Peterson, and charged that the conveyance to Mrs. Hall was the result of a conspiracy between Hall and Peterson to cheat and defraud Hooper. It alleged that Mrs. Milton S. Hall was a fictitious person, and that Hall was the person intended by the deed from Peterson. The prayer was that "Mrs. Milton S. Hall" be declared to mean "M. S. Hall;" that the mortgage to Peterson be declared void against plaintiff, and that the land be subjected to the judgment. There was an attempt by the publication of notice to obtain constructive service upon all the defendants; but as the affidavit for publication made no reference whatever to Mrs. Hall, it may be assumed that the proceedings as to her were absolutely void. Hall and Peterson made default and a decree was entered directing a sale of the land in satisfaction of Hooper's judgment. Under this decree all but forty acres were sold to Hooper, at a price more than sufficient to satisfy his judgment. Subsequently, in 1876, Hooper having become the owner of the notes to secure which Hall had given the mortgage, he brought an action against Hall and his then wife, but not against the heirs of the first Mrs. Hall, he having remarried, to foreclose the mortgage. Service in this case was constructive, but the affidavit for publication is conceded to have been fatally defective. A decree of foreclosure was entered and the remaining forty acres sold under that decree to Hooper. It will be observed that the plaintiffs claim relief solely on the ground that the proceedings were void as to them and their ancestor,—the proceedings on the creditors' bill, because no jurisdiction was obtained as

to Mrs. Hall; the foreclosure proceedings, be-
cause no jurisdiction was obtained over any per-
son and the plaintiffs were not even made parties.
No offer to redeem from the mortgage is made,
because the plaintiffs' theory is that the title be-
ing in Mrs. Hall, the mortgage executed by Hall
alone created no lien upon her land.   In addition
to the issues already stated the defendant pleads
that plaintiffs are estopped by claiming under the
deed to Mrs. Hall from denying the validity of the
mortgage executed by Hall as a part of the same
transaction.   The plaintiffs in reply charge two
estoppels.   They charge that Hooper is estopped
to deny the validity of the conveyance to Mrs. Hall
because he claims under a deed purporting to
convey her interest.   They further charge that
the defendant is estopped to assert the validity of
the mortgage because of his successful impeach-
ment thereof by the proceedings on the creditors'
bill.   The district court found "that the plaintiffs
have now no cause of action," and dismissed the
case.   From this decree the plaintiffs appeal.   It
may be inferred from the use of the word "now"
in the finding above quoted, as well as from the
direction which the argument has largely taken,
that the district court was of the opinion that an
action to quiet title would not lie while Hooper
was in actual possession of the land.   It is clear
that plaintiffs, while admitting an estate in
Hooper for the life of Hall, could not yet maintain
ejectment.   If this was the view of the district
court it was fully warranted by the case of *State
v. Sioux City & P. R. Co.*, 7 Neb., 357, followed by
several other cases implying that an action to
quiet title will not lie against one in actual pos-
session of the land in controversy.   A defendant

in such actual possession is entitled to the rights accorded by an action of ejectment where the plaintiff, claiming the legal title, seeks to oust him from possession. (*Gregory v. Lancaster County Bank*, 16 Neb., 411; *Snowden v. Tyler*, 21 Neb., 199; *Betts v. Sims*, 25 Neb., 166.) The rule stated in these cases is unquestionably correct; but in *State v. Sioux City & P. R. Co.*, *supra*, and some other cases, its limitations were lost sight of. The distinction was not observed between an action to establish title and an action to recover possession of the land. Section 57, chapter 73, Compiled Statutes, provides: "That an action may be brought and prosecuted to final decree, judgment, or order, by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest and quieting the title to said real estate." Section 59 provides: "Any person or persons having an interest in remainders or reversion in real estate shall be entitled to all the rights and benefits of this act." In *Foree v. Stubbs*, 41 Neb., 271, decided since this case was tried in the district court, the object of this statute was carefully considered. *State v. Sioux City & P. R. Co.* was overruled in so far as it denied a right to proceed to quiet title against one in possession, and the rule established in conformity with the language of the statute. If Hooper was tenant of the life estate, a possessory action could not now be maintained against him; but the plaintiffs could proceed under section 59 to have their estate in remainder established.

It becomes necessary to consider separately the

title to that portion of the land sold under the decree based on the creditors' bill and that portion sold under the decree of foreclosure. Considering first the former portion, the plaintiffs claim solely under the deed from Peterson and because of want of jurisdiction over Mrs. Hall in the proceedings resulting in the sale. The evidence shows beyond all controversy that Mrs. Hall paid no consideration for the land and had no connection with the transaction. It is as clear as anything can be made by human evidence that the conveyance of the land to her was an artifice to divest any lien or claim which might have been obtained by virtue of the garnishment of Peterson in the action against Hall. The plaintiffs merely represent Mrs. Hall. They have no higher claim than she had. They are here seeking the affirmative aid of a court of equity to establish their title. Whatever may be the rights of parties to assert at law the invalidity of a judgment, or at law or in equity to resist its enforcement for want of jurisdiction to render it, it is the firmly established doctrine that a court of equity will not lend its affirmative aid to persons seeking to avoid the enforcement of a void judgment, unless it be made to appear that they have a valid defense thereto. (*Chicago, B. & Q. R. Co. v. Manning*, 23 Neb., 552; *Osborn v. Gehr*, 29 Neb., 661; *Hartford Fire Ins. Co. v. Meyer*, 30 Neb., 135; *Wilson v. Shipman*, 34 Neb., 573; *Janes v. Howell*, 37 Neb., 320; *Pilger v. Torrence*, 42 Neb., 903.) In some of the cases cited the rule was confined to judgments regular on their face; but we can perceive no distinction on principle. The doctrine is based on the broad principle that to obtain relief from a court of equity an equitable right must be shown. Where

a party is without equity in his favor the court
will remit him to his legal remedies. If one can-
not obtain the aid of a court of equity to prevent
the enforcement of a void judgment without show-
ing a defense thereto, it would seem to follow that
he cannot, without showing such defense, obtain
the assistance of a court of equity to vacate pro-
ceedings whereby the judgment has already been
enforced; and to apply the rule to the present
case the plaintiffs cannot be permitted to set aside
the sale made under the void decree without
establishing an equity to the land in themselves.
(*Hughes v. Housel*, 33 Neb., 703.)

As to the forty-acre tract, the case rests on en-
tirely different principles. Hooper claims title
not under the creditors' bill or adversely to the
conveyance to Mrs. Hall, but through that convey-
ance, or, at least, through the foreclosure of the
mortgage which was a part of the transaction.
Mrs. Hall died before the foreclosure suit was in-
stituted. The plaintiffs were not made parties,
and Hall, who was made a party, was not sub-
jected to valid service. The proceedings were
therefore wholly without jurisdiction, and the
foreclosure and sale were void. The plaintiffs
contend that the mortgage was not a lien upon
the land beyond Hall's life estate, which fell in
subsequent to the execution of the mortgage.
This claim is based on the fact that the mortgage
was executed by M. S. Hall in his own name, and
did not purport even to be the act of Mrs. Hall or
that of Hall as her agent. It must be remem-
bered, however, that the conveyance was made to
Mrs. Hall in satisfaction of Peterson's debt to
Hall, and the mortgage was executed at the same
time, and as a part of the same transaction, to

secure the repayment of the excess of the value of the land over Peterson's debt to Hall. The plaintiffs are entitled to Mrs. Hall's rights,—no more. Hooper, on the other hand, by the purchase of the Peterson notes, became vested with Peterson's rights. It is argued that there is no proof that he paid any consideration for the notes. This, however, makes no difference. (*Loney v. Courtnay*, 24 Neb., 580.) Assuming that Hall at the time of the transaction was without any authority to contract on behalf of Mrs. Hall, it is nevertheless the established law that a principal who affirms or ratifies a contract made for him by his agent must adopt all the instrumentalities employed by his agent to bring it to a consummation. (*Joslin v. Miller*, 14 Neb., 91.) The mortgage cannot be sustained as a legal mortgage, because not executed by the owner of the fee; but an application of the principle stated requires that it should be given effect as an equitable mortgage. (*Love v. Sierra Nevada Lake Water & Mining Co.*, 32 Cal., 639; *Miller v. Rutland & W. R. Co.*, 36 Vt., 452.) The rule established by these cases is that a mortgage made by an agent in his own name is binding in equity if the agent had authority and the failure to execute it in the name of the principal resulted from accident or mistake. It is true that Hall had no authority in writing from Mrs. Hall to execute the mortgage, as would seem to be required by section 25, chapter 32, Compiled Statutes; but we do not think that in order to give effect to the equitable principle underlying these decisions the transaction must necessarily be evidenced as required by the statute of frauds. In the Vermont case cited there was no memorandum which to our mind would be sufficient to satisfy the statute. All

that existed was a resolution of the board of
directors of the corporation on whose behalf the
conveyance was executed.    We think the case is
within the principle of *Morrow v. Jones*, 41 Neb.,
867, where a grantee in a deed absolute in form
was held bound through the acceptance of the
deed by a defeasance executed by an attorney not
in that behalf authorized.    The mortgage by Hall
must therefore be treated as a valid lien upon the
land, as between the parties to the transaction.
What the rights of a *bona fide* purchaser would be
need not be considered.· The case as to the forty-
acre tract then resolves itself into this: The mort-
gagors seek to have their title established against
a mortgagee in possession under a sale made to
him in the course of void foreclosure proceedings.
It is pleaded that Hooper is estopped from setting
up title under the foreclosure proceedings by
reason of his prior proceedings under the cred-
itors' bill adjudging the mortgage as well as the
deed to Mrs. Hall void as against him; but the
conveyances attacked by the creditors' bill were
not absolutely void.    They were only void as
against creditors.    Hooper was a creditor at the
time and he did successfully attack the convey-
ances; but he satisfied his debt through a sale of
the remainder of the land.    His debt having been
satisfied, the basis on which he obtained the de-
cree in the creditors' bill was destroyed.    He
was no longer a creditor.    He was no longer
entitled to attack the conveyances as to the
rest of the land.    Much less was he estopped
from affirming them.    Let us suppose that the
mortgage had been foreclosed by Peterson him-
self upon this forty acres.    The decree on the
creditors' bill would certainly not estop him from

such proceedings.   Suppose, on foreclosure by
him, Hooper bought the land.   He could certainly
take good title.   Suppose, on the other hand, the
land sold in pursuance of the creditors' bill had
been bought by a stranger.   Hooper would cer-
tainly be estopped from setting up the mortgage
as against the title of such a stranger acquired
under proceedings by Hooper impeaching the
mortgage.   But Hooper had in the first instance
his election to avoid the conveyances or to let
them stand.   He elected to avoid them as a cred-
itor and subjected a portion of the land to the pay-
ment of his debt.   The debt was entirely satisfied
out of that portion.   He was no longer a creditor
and could not assert any claim against the re-
maining portion.   He then had the same right to
deal with the grantees of the remaining portion
on the faith of their ownership as a stranger with
notice would have.   It is a purely fortuitous cir-
cumstance that the same person acquired title to
that portion subjected to sale by the creditors'
bill and to that portion sold under the mortgage;
and no estoppel arises.

The petition having been drawn on the theory
that not only were the foreclosure proceedings
void, but the mortgage also, no offer was made to
redeem from the mortgage.   We hold that the
mortgage was not void, and therefore the plaint-
iffs, representing the mortgagor, must, in order to
remove the cloud cast by the deed executing the
foreclosure sale, offer to pay what is equitably due
under the mortgage.   (*Loncy v. Courtnay, supra.*)
The fact that the action was not brought until
more than ten years after the mortgage matured
does not relieve the plaintiffs from that obliga-
tion.   (*Merriam v. Goodlett*, 36 Neb., 384.)   Al-

Hall v. Hooper.

though the statute of limitations has prevented a foreclosure of the mortgage, the mortgagor must offer to redeem in order to obtain affirmative relief from a court of equity.    In the case last cited the plaintiff was permitted to amend in this court by offering to redeem; but in the case before us it stands admitted that Hooper entered into possession in 1876, much more than ten years before this suit was brought.    It has been held that where the lands have remained unoccupied, the statute of limitations does not begin to run against a bill to redeem  until tender of money or a refusal to reconvey.  (*Wilson v. Richards*, 1 Neb., 342.)  But we think, by all the authorities, the statute does begin to run after the debt matures from the time the mortgagee enters into open, notorious, and actual possession under claim of ownership.    Even under the old practice, where courts of equity were not bound by, but merely followed the analogy of the statutes of limitations, such was the rule.  (*Anonymous, by Lord Hardwicke*, 3 Atk. [Eng.], 313; *Dexter v. Arnold*, 1 Sum. [U. S.], 109; *Knowlton v. Walker*, 13 Wis., 295; *Montgomery v. Chadwick*, 7 Ia., 114.)  The action was therefore barred whether the four or the ten-year statute applies, and the defendant pleaded the bar.

It is contended that Hooper is rightfully in possession for the life estate of Milton S. Hall, and that, therefore, the statute has not yet begun to run; but we have already held that under our law this action may be maintained by a remainder-man during the term of a tenant for life. Indeed, as already suggested, if this were not true, the plaintiffs would have no standing in court at this time.    The answer made to this is

that Hooper's possession has never become adverse to the plaintiffs on account of such life estate; but as to this forty-acre tract, at least, there is not only no presumption that Hooper's possession is for the life estate of Hall, but it was manifestly from the outset adverse to the plaintiffs under a claim of ownership in fee. The foreclosure proceedings are as much void against Hall as they are against the plaintiffs. The mortgage purports to incumber the fee. Foreclosure was sought against the fee. The sheriff's deed purports to convey the fee. It was recorded the day after its execution. Everything shows that Hooper's possession has been under a claim derived from the foreclosure, and not as life tenant. Amendments are by the Code permitted in furtherance of justice. (Code of Civil Procedure, sec. 144.) We hold the mortgage to have been a valid equitable incumbrance upon the land, and that the plaintiffs are not entitled to relief against it as against the mortgagee, in possession under a void foreclosure sale, without offering to redeem. They have not so offered, and their right to redeem being barred by the statute of limitations, we cannot now permit an amendment for that purpose.

JUDGMENT AFFIRMED.

HARRISON, J., not sitting.