CHRISTINA COPPOM, APPELLANT, V. ROBERT FORMAN,
APPELLEE.

FILED JUNE 22, 1905. No. 13,843.

Pleadings and evidence examined, and *held* to require an affirmance
of the decree of the district court.

APPEAL from the district court for Furnas county:
ROBERT C. ORR, JUDGE. *Affirmed.*

*W. S. Morlan,* for appellant.

*E. B. Perry* and *John T. McClure, contra.*

DUFFIE, C.

The amended petition in this case alleges that the plaintiff is the owner and in possession of the northwest quarter of section 20, in township 4, range 24, in Furnas county, Nebraska, and that the defendant is the owner of the southwest quarter of said section. It is further alleged that plaintiff, with her husband, settled upon and made claim to said land in 1879 under the preemption law of the United States; and that in 1882 Adolph Coppom, the husband, made final proof, and obtained a receiver's final receipt therefor; and that in February, 1885, a patent was duly issued to him for said northwest quarter; that in 1894 the plaintiff and her husband conveyed the land to Andrew Ruben, which conveyance was for the purpose of vesting title in the plaintiff, and that in May, 1897, Ruben and wife conveyed the same to her; that Adolph Coppom died in May, 1897; that plaintiff has always lived on said land from date of settlement thereon, occupying the same to what is called the "original quarter corner" on the west side of said section 20. It is further stated that in June, 1900, D. S. Hasty, the then county surveyor of Furnas county, made a pretended survey of sections 19 and 20 in the above township and range,

and set a stone on the line between said section 16 rods north of the point which had for more than 20 years prior thereto been known and recognized as the original quarter corner between said sections, and which said stone is now known as the "Hasty quarter corner"; that after the establishment of the Hasty quarter corner the defendant entered upon the tract of land in dispute, moved a building thereon, and constructed a fence across the tract, removing a fence which the plaintiff had placed thereon. Plaintiff removed the fence built by defendant when he began to erect another one, and commenced cutting and harvesting the grass growing upon the land. In the original petition a temporary injunction was prayed and issued, and the prayer of the amended petition is that the injunction be made perpetual; that defendant may be enjoined from trespassing upon the land in dispute, and from building or maintaining any buildings thereon, and from interfering with or removing any fence erected by the plaintiff, or any of the crops on said land; and that plaintiff's title to said tract be quieted, and defendant adjudged to have no interest therein.

It is quite apparent from the allegations of the petition, and the evidence on the trial makes it certain, that after the Hasty survey, which located the quarter corner 16 rods north of what the plaintiff claims to be the original quarter corner established by the government survey between sections 19 and 20, the defendant took possession of the disputed tract containing about 16 acres, moved a building thereon, and erected a fence along what he claimed to be the boundary line between himself and the plaintiff, and that he was in the actual possession of the tract at the time of the commencement of this action. The facts in this case as to possession by defendant are not substantially different from those alleged in the petition in *Warlier v. Williams*, 53 Neb. 143, in which it was said that "a plaintiff is not entitled to a mandatory injunction to remove from real estate one who has without color of title unlawfully and forcibly entered and wrongfully re-

mains thereon, though such trespasser be insolvent." If the action was based solely upon the plaintiff's claim that this disputed strip of 16 acres was part of the northwest quarter of section 20, we would have no hesitation in dismissing the plaintiff's petition, and remitting her to her action at law to recover possession of the premises. But the plaintiff asserts a claim of title to the disputed land by adverse possession, and, under the rule in this state, an action to quiet title may be maintained by any party, whether in or out of possession of the premises, against another asserting an adverse claim. *Foree v. Stubbs,* 41 Neb. 271; *Hall v. Hooper,* 47 Neb. 111; *Bayrs v. Nason,* 54 Neb. 143; *Ross v. McManigal,* 61 Neb. 90. This phase of the case requires us to examine the evidence and determine therefrom the location of the original quarter corner on the west side of section 20, and the plaintiff's claim to have occupied the land south to the point which she now claims to be the original quarter corner for the statutory period. In June, 1888, Joseph S. Phebus, county surveyor, made a survey of at least a part of the line between sections 19 and 20, and either placed or found a stone at a point which he established as the quarter corner on the west side of section 20. The field notes of this survey show that he commenced at the government corner common to sections 19, 20, 29 and 30, running north 40 chains and 26 links to the quarter section corner between 19 and 20, where he found an old stake and set a stone 10 by 5 by 2 to perpetuate the corner; thence north 44 chains and 28 links to the corner of sections 17, 18, 19 and 20, where were a mound and pit. This survey was made at the request of J. Higgins and Adolph Coppom. Mr. Higgins testified upon the trial that the survey commenced at the common corners of sections 19, 20, 29 and 30, and ran thence north one-half mile, where Coppom took a spade and uncovered a stone; and, while the field notes of the survey made by Phebus show that the survey was continued to the northwest corner of section 20, Higgins testified that the north half mile was not surveyed.

His testimony regarding that is as follows: "He only surveyed half up the section; I asked to run it on through and have the corner located, but he said it was not necessary, that was all it was necessary to do."

The evidence is quite conclusive to our minds that the original government quarter corner on the west side of section 20 is something like 16 or 18 rods south of where the plaintiff claims that Phebus established it, and in the immediate vicinity of what is called the "Hasty quarter corner." Lawrence D. Carroll, a witness for the defendant, was well acquainted with the premises in the year 1873, and was asked this question: "Going back now to 1873, when you said you found the government corners, I will ask you if at that time you found government landmarks, so that you could determine the lines between the southwest quarter and the northwest quarter of said sections? A. Yes, sir. The whole country was surveyed in 1870, and perhaps it would be a mound 18 inches high, and you could see them for a long way all over the country." It is clear that the government pit and mounds would be very distinct for a period of three years or more after they were made, and Mr. Carroll locates the point at which the government quarter coroner on the west side of section 20 was located as from 18 to 20 rods north of the point which plaintiff claims as her southwest corner. He states that there is a row of cottonwood trees about on the line between the two quarters, and about where the government line runs and 18 or 20 rods north of the line as now claimed by the plaintiff. Carroll further testified that Charles Twist occupied the southwest quarter of section 20 in the fall of 1873; that he helped him build a house on the land during that fall. He also states that the fence now claimed by plaintiff to be on the boundary line between the two quarters is from 18 to 20 rods south of where he knew the government quarter corner to be. One Morrill, who worked for the Coppoms in 1882 and 1883, testified that Coppom planted a row of cottonwood trees on his south line during the time he was in his em-

ploy; that, when preparing to plant the trees, Coppom directed him to ride over to the corner and stand there until they got a furrow plowed to plant the trees in, telling him where the corner was. It was then marked by a fence and a stone, and he stood at this corner, which we understand to be the corner in dispute, while the furrow was run. He claims to be well acquainted with the land, and says that the corner now claimed by Mrs. Coppom is close to 20 rods south of the place where he was directed to stand. G. B. Misner testified that he cut hay on the southwest quarter of the section in 1890; that he had a conversation with Adolph Coppom relating to the north line of that quarter, and that Coppom showed him three or four rows of cottonwood trees as marking the line; that these trees are about 18 rods north of where plaintiff now claims the line to be. One Bolinbaugh testified that Adolph Coppom told him at one time that he had established his corner about 14 rods to the south, so as to get more alfalfa land. There is evidence on behalf of the plaintiff that her fence and the line claimed by her is that established by the Phebus survey of 1888, but, in our judgment, the immovable monuments shown to have existed on the southwest quarter since 1873, such as the Twist sod house which was erected in that year, the cottonwood trees planted by Adolph Coppom himself on what he then claimed to be his south line, the fact that this quarter corner was well known by one or more of the witnesses at an early date, and while the government corner established by the government survey was plain and distinct, all lead us to the conclusion that there has been a gradual encroachment by the plaintiff and her husband upon the southwest corner of the section, and that the land in dispute is a part of the southwest quarter. We are better satisfied with this conclusion as it agrees with that of the district court, who had an opportunity to hear and see most of the witnesses who gave evidence in the case, and a much better opportunity to judge of their candor and truthfulness than have

we, who are only allowed to read a cold and impassive record.

The amended petition in this case was filed March 28, 1902, but there is nothing in the record to show us when the original petition was filed and the action commenced. We think that the weight of evidence is to the effect that no claim was made to the land in dispute by the plaintiff or her husband prior to the fall of 1890, when Misner cut hay upon the southwest quarter. Whether this action was commenced prior to the fall of 1900, or after that, we cannot know, as the original petition and the summons issued and served are not contained in the transcript. It is impossible therefore for us to tell whether the action was commenced within ten years from the fall of 1890, or whether ten years by which title by adverse possession could be acquired had expired since Coppom pointed out his south line to Misner. Being without exact data to determine this question, we accept the finding of the district court, and recommend the affirmance of the decree.

JACKSON, C., concurs. ALBERT, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.