Criswell v. Criswell.

LYDIA J. CRISWELL ET AL., APPELLEES, v. JOHN M. CRISWELL ET AL., APPELLANTS.

FILED MAY 19, 1917. No. 19142.

1. Remainders: ADVERSE POSSESSION. The possession of land by one who holds under a void administrator's deed, the land being sold to pay debts of the estate, will be construed to be hostile and adverse to a remainderman, so as to commence the running of the statute barring action for the recovery of the title or possession of the land, from the time that he knows that the possessor claims the entire estate in his own right, or from the time when, in the exercise of reasonable care for his own rights, he should have known that the land was so held by the one in possession.

2. **Life Estates: Life Tenants: Adverse Possession.** "The possession of land by a life tenant will not be construed to be hostile and adverse to a remainderman unless the knowledge is clearly brought home to the latter that the life tenant claims the entire estate in his own right, adverse and hostile to any claim or interest in the land by the remainderman or others claiming under him." *Maurer v. Reifschneider*, 89 Neb. 673.

3. **Overruled Cases.** *Hobson v. Huxtable*, 79 Neb. 334, *McFarland v. Flack*, 87 Neb. 452, *Helming v. Forrester*, 87 Neb. 438, and *Bohrer v. Davis*, 94 Neb. 367, in so far as they are in conflict with the rule as herein stated, are overruled.

4. **Evidence: Presumptions: Administrator's Sale: Consent of Minors.** On the trial of the case, a transcript of the proceedings in the district court, leading up to the administrator's sale and confirmation thereof, was introduced without objection, which showed written consent upon the part of certain of the remaindermen, then minors, to the sale. The original document was not introduced. *Held*, that this constituted presumptive evidence that the consent purporting to be signed by them was a genuine instrument.

5. **Infants: Estoppel: Administrator's Sale.** Upon becoming of age, it became the duty of such remainderman to affirm or disaffirm the sale. Failure to disaffirm such sale within a reasonable time after maturity would constitute an estoppel against them from disputing the title of the purchaser at the sale.

Appeal from the district court for Knox county: Anson A. Welch, Judge. *Reversed.*

*McGilton, Gaines & Smith* and *W. A. Meserve,* for appellants.

*M. F. Harrington,* contra.

Cornish, J.

Over 30 years ago, Andrew Hammond died, leaving a wife and 14 children.

In May, 1887, one Stolp, who succeeded Andrew P. Hammond as administrator, for the purpose of paying debts of the estate, obtained leave and sold the south half of the southeast quarter of section 34, of the estate, to one M. G. Owens, for the sum of $885, its fair value, giving his deed, purporting to convey the title, which was confirmed in the district court December 8, 1887. From that day to this

Owens and his successors, through mesne conveyances, have been in open, notorious, exclusive and adverse possession of the land, claiming to own the same in fee. It is agreed that M. G. Owens, purchaser, was a stranger to the title, did not enter by virtue of the widow's life tenancy, and that the deed to him, though color of title, was void because the land was part of the homestead. This is true unless certain heirs are estopped to claim title—a matter not necessary to the present discussion, but which will be considered later.

This action is brought by some of the heirs to recover possession of and by others to quiet title to the land, and for rents and profits. The widow, owner of the life estate, died February 25, 1901. This action was commenced February 14, 1911, lacking eleven days of being ten years after her death. The defendant's adverse possession, as above stated, goes back to December 8, 1887. Three of the children had not been of age ten years when the action was commenced. It is agreed as to them that the statute of limitations has not run. As to the other heirs, more than ten years having elapsed since they became of age, it is contended by defendant that their action is barred by the ten-year limitation of the statute. It is contended by the plaintiffs that their action to recover possession is not barred until ten years after the death of the life tenant, their mother. This constitutes the main controversy which we have to determine.

We must first consider the law as heretofore decided by this court. The general rule is that the remainderman has ten years in which to commence an action to recover possession after the death of the life tenant, and cannot commence the action before such death. In the meantime the remainderman is not without a complete remedy against one claiming adversely. It is expressly provided by statute that he may at any time avail himself of the action to quiet title, procuring a decree which will determine his right to possession at such time as he may be entitled to it.

Presumably, the person in possession is the life tenant, or one in privity with the life tenant, and generally such person's possession will not be adverse to the remainder-man. Hence, no cause will arise in such cases until the death of the life tenant. Here, the rule supposes an unin-terrupted continuation of the relation of life tenant and remainderman. When, as in this case, possession is in a stranger to the title, who has acquired an independent title, or color of title, adverse to the remainderman and life tenant, the question bears a different aspect.

It is important to consider some of our decisions.

*Hall v. Hooper*, 47 Neb. 111, was an action brought by the remainderman to quiet title, while the life tenant was yet living, against one in possession under a void deed like the one in controversy. The court said the action was the proper one, but held that, inasmuch as the defendant's pos-session had been adverse for more than 10 years since plaintiff arrived at maturity, the action was barred and title quieted forever in the defendant.

*Lyons v. Carr*, 77 Neb. 883, is like the case in hand—void administrator's sale and deed to pay debts of the estate. The widow, life tenant, and surviving children bring ac-tion to quiet title. Held, that the statute commenced to run from the time of the sale, and the court quiets title forever in the purchaser, as against the widow and re-mainderman. *Hall v. Hooper, supra,* is cited.

*Hobson v. Huxtable,* 79 Neb. 334, on rehearing 340, was an action to quiet title by two remaindermen against the adverse possessor under void deed. The life tenant died pending suit. Two other remaindermen filed cross-petitions in ejectment. The court sustained their action, although an action on their part to quiet title would have been barred by the running of the statute since their ma-turity.

In *Holmes v. Mason,* 80 Neb. 448, plaintiff was pur-chaser and adverse holder under a void deed at adminis-trator's sale to pay debts. An action was brought to quiet title while the life tenant was still living. The court held

that the statute began to run when the remaindermen reached their majority, and, ten years having elapsed, title was quieted in the plaintiff.

In the case in hand, three of the plaintiffs, not of age ten years when the action was commenced, ask to have title quieted in them. The others, admitting that such action is barred as to them, ask a recovery of the land. As they say in their brief: "What we are after in this case is the right to raise oats, wheat, corn, alfalfa, and other products upon this land." They do not care where the title is.

This view, if correct, presents a surprising state of the law. Logically, it assumes that ownership may be in one and use forever in another. It lets the determination of the question, who shall have the shell and who the kernel of the nut, depend on accident. It makes out of remedial forms causes of action. It will lead to absurd and unjust results. In the case in hand, when the life tenant died, one-half of the remaindermen were more than ten years past maturity. If this view is sound, then we must say to the defendant: "Everything depends on the time and manner that the facts of a case happen to come before us. As it is, we must give to the plaintiffs the order in ejectment prayed. If you had been more alert and quick-witted and had commenced action to quiet title just before the life tenant died, your rights to the land would have been secure." We must say to all but three of the plaintiffs: "While we give you possession, we cannot quiet title in you. Your right is barred; but, after you get possession, then, according to our decisions, you may commence a new action against the defendants and have title quieted in you, doing indirectly what cannot be done directly." We must say to remainderman, as in *Hall v. Hooper, supra*: "If you bring your suit now, while the life tenant is living, we must defeat you because ten years have elapsed. If you will wait a year or two, until the life tenant has died, your possession will be sure." We must say to those who have had ten years' adverse pos-

101 Neb.—23

Criswell v. Criswell.

session against adults: "If you bring your action now, your title is perfect. If you wait, even though you do not know that your title is questioned, until the life tenant dies, though 25 years hence, the judgment is equally certain against you." It is apparent that this ought not to be, and we think is not the law.

To make one's rights depend upon facts or events which have not the slightest connection with the merits of the controversy is both absurd and unjust. Litigants cannot be expected to know these quirks of the law. If one's right to land against the remainderman is complete today, it is absurd that the death of a third party tomorrow can defeat those rights and lose to him all the benefit of the situation which exists. The rights through court procedure of conflicting claimants to land should be mutual and equal so far as may be.

The rule is also unjust in this: Equitable conduct requires that one should make a timely assertion of his rights against another who he knows may be acting in innocence of his claim. The moral principle upon which estoppel is based applies. While, ordinarily, one has the undoubted right to bring his action within the statutory period, yet, as held in *Hawley v. Von Lanken*, 75 Neb. 597, and afterwards in *Foltz v. Maxwell*, 100 Neb. 713, courts of equity have inherent power to refuse relief, after undue and inexcusable delay, independent of the statute, when not to do so would work injustice in the particular case.

In so far as the view under discussion reflects the holding in *Hobson v. Huxtable*, *supra*, that case should be overruled. To quote from defendant's brief: "Either this court was wrong in *Hall v. Hooper* and *Holmes v. Mason* or in *Hobson v. Huxtable*. (Also *Lyons v. Carr*, *supra*.) It is to be remembered that the court decreed in *Holmes v. Mason* that the possession of Holmes, even pending the life estate outstanding, was sufficient on which to base a decree quieting the title of Holmes against the remaindermen not under disability. If we are going to adopt the proposition that there cannot be any adverse

possession as against the remainderman, pending a life
estate, then *Hall v. Hooper* and *Holmes v. Mason* are both
wrong.   It is anomalous to assert that an adverse right
of possession may run against remaindermen sufficient
to enable the adverse holder to quiet his title against the
claims of the remaindermen, and at the same time hold
that the right of the remaindermen, so far as any posses-
sory action is concerned, is not barred by the statute of
limitations.   Yet if it is true that there cannot be any ad-
verse holding by one in possession during the life of the
life tenant out of possession as against the remainder-
man, then certainly it should be held that the remainder-
man loses no rights whatsoever, either in law or in equity,
by such possession.   If the possession may be adverse to
remainderman during the life of the life tenant as de-
cided in *Hall v. Hooper* and in *Holmes v. Mason,* then cor-
relatively the same adverse possession that would bar the
remainderman's right to quiet his title should give the
adverse holder the right to maintain and obtain a decree
quieting title against him.   It is unreasonable to assert
that while the statute has run against the action to quiet
title, by reason of adverse possession, yet the possessory
right remains intact.   Under the *Huxtable* case the court
could put the barred remainderman into possession, and
then, having put him there, could, under the doctrine laid
down in *Batty v. City of Hastings,* 63 Neb. 26, and *Dring-
man v. Keith,* 86 Neb. 476, quiet the title, and so do by in-
direction what the court has in all cases asserted might
not be done."

Section 6266, Rev. St. 1913, provides: "An action may
be brought  *  *  *  by any person or persons, whether
in actual possession or not, claiming title to real estate
against any person or persons who claim an adverse es-
tate or interest therein, for the purpose of determining
such estate or interest, and quieting the title."

Section 6268 provides: "Any person or persons having
an interest in remainders or reversion in real estate shall
be entitled to all the rights and benefits of this article."

Criswell v. Criswell.

As to half the remaindermen in this action, more than ten years had elapsed since their arriving at maturity and the death of their mother, the life tenant. If either they or the defendant had commenced action just before the mother died, this court, following its decisions (there is not one to the contrary), would have quieted title in the defendant. It seems that the above quoted statutes make such decisions necessary. Such decisions, too, would have been made upon the ground that, ten years having elapsed, the defendants' adverse possession had ripened into title. Statutes of limitations as to land bar rights, not remedies. This court has distinctly held that in substance. In *Postal v. Martin*, 4 Neb. (Unof.) 534, we held: "Adverse possession of lands for the period of limitations operates of itself as a grant of all adverse titles and interests to the occupant." The facts existing, title vests by statute. *Gatling v. Lane*, 17 Neb. 77. How can it be said that these plaintiffs still have their remedy in ejectment when their title had gone, and consequently their right to possession? To so hold is equivalent to reversing several of our decisions as to the nature of the bar of the statute as applied to land.

In *Foree v. Stubbs*, 41 Neb. 271, we held: "The purpose of the act of 1873, entitled 'An act to quiet title to real estate' (secs. 57, 58, 59, ch. 73, Comp. St.), was to abolish the fiction of constructive possession and prevent a multiplicity of suits, by a determination in one action of the rights of all persons asserting title to real estate." From the time of the passage of that remedial statute, with or without a statute of limitations, it became incumbent upon all persons claiming an interest or title in land to make a timely assertion of their claim. *Hawley v. Von Lanken*, and *Foltz v. Maxwell, supra.*

This seems to be the holding in other jurisdictions. In *Murray v. Quigley*, 119 Ia. 6, 14, 97 Am. St. Rep. 276, the court, in discussing this statute, says that there can be no hardship in such a rule, and adds: "And more especially

is this true where the possession is or may be held under a title entirely independent of and hostile to the life tenant." In *Crawford v. Meis,* 123 Ia. 610, 618, 101 Am. St. Rep. 337, the court, commenting upon this rule, states that it "involves no hardship, and the beneficent effect thereof must be to bring up for settlement disputed questions of title before becoming stale, and while yet the facts are within reach of the parties interested." See, also, 1 R. C. L. 743.

This court has held that, as between cotenants, where the acts of one unequivocally show adverse possession, or conduct amounting to an ouster, the statute of limitations commences to run as against the other cotenant.

As between life tenants and remaindermen, we have held that the statute commences to run in favor of the life tenant whenever knowledge is clearly brought home to the remainderman that the life tenant claims the entire estate. *Maurer v. Reifschneider,* 89 Neb. 673. When the statute should begin to run depends somewhat on the character of the possession. When, as in this case, the person in possession, purchased at administrator's sale, is a stranger to the title, and did not acquire any estate, possessory right or claim through the life tenant, the remaindermen are much more likely to know the situation than if it were adverse possession by a life tenant, and less likely to be deceived as to the character of the possession that is claimed. As against the remaindermen, it would seem equitable that the adverse holding should commence the running of the statute whenever they have actual knowledge of such possession, or whenever, in the exercise of reasonable care and prudence, they should have acquired such knowledge.

In the case before us, the heirs must have known of the adverse holding by defendant at all times. While the evidence is not clear and specific on this point, the fact remains that the remaindermen lived across the street from the land in controversy while the defendants lived thereon. It will also be recalled that in 1886 the widow petitioned for the sale of the land to pay the debts of the estate. Of

course, the statute would not commence to run until the children had arrived at their majority.

The argument has another phase which deserves our attention. The statute applicable (Rev. St. 1913, sec. 7564) reads as follows: "An action for the recovery of the title or possession of lands, tenements or hereditaments, * * * can only be brought within ten years after the *cause of action* shall have accrued." Sometimes statutes relate to remedy. This calls on us to determine what is the cause of action, for the reason that, if an action to quiet title and one to recover possession are two remedies for one cause of action, then the statute would be conclusive in this case.

Bliss, Code Pleading (3d ed.) sec. 1, defines a civil action, and then says: "As the action is a judicial proceeding for the redress or prevention of a wrong, the cause of action must necessarily be the *wrong which is committed or threatened,* and the object of a specific action is such redress or prevention by means of the relief which is sought." The cause of action must be some wrong committed or threatened touching one's rightful claim to the land. As to the remainderman, his cause of action in an action to quiet title against one in possession, claiming title adversely, and his action to recover possession are identical. In both cases his cause of action is the adverse claimant's possession, coupled with a wrongful claim of ownership. It is the wrongful refusal to recognize the plaintiff's rights in the land. On this principle that "the identity of the cause of action is preserved," this court has permitted actions to recover possession to be converted into actions in equity, and, conversely, actions to quiet title to be converted into ejectment actions, and has held that the commencement of either stops the running of the statute. The forms of action go to the remedy, not to the cause. *Gregory v. Lancaster County Bank,* 16 Neb. 411; *McKeighan v. Hopkins,* 19 Neb. 33; *Homan v. Hellman,* 35 Neb. 414; *Scroggin v. Johnston,* 45 Neb. 714; *Butler v. Smith,* 84 Neb. 78.

This view is consistent with this court's holdings, above mentioned, that statutes of limitations bar rights. *Postal v. Martin,* and *Gatling v. Lane, supra.* To hold, as we always have, that the *quia timet* action begins running with adverse possession, and also hold that afterwards, by reason of a death, a new statute allowing another remedy involving title commences running, is in defiance of those decisions and of logic.

We have found only four cases decided that are like the instant case, where the adverse holder was a stranger holding by independent title, not in privity with the life tenant. Three of these, including the latest, are in conformity with this opinion, the *Huxtable* case being the exception.

Other cases have been decided where the contest was between the remainderman and the life tenant or one in privity with the life tenant. The presumption of fact is that the possession of the life tenant, or one holding under or through the life tenant, is lawful and not adverse. Remaindermen have the right to act on that presumption, and not be charged with the duty of keeping their estate under constant observation. We held in *Maurer v. Reifschneider, supra,* that the statute would not begin to run in such cases until knowledge of the adverse holder's claim to the entire estate had been brought home to the remainderman. In these cases there is a conflict in the decisions. No one has denied the right of the adverse possessor to his *quia timet* action against remainderman or remainderman's right to the same action against the adverse possessor; but, where no such action has been brought during the life of the life tenant, it has been held that the remainderman should be permitted to commence action to recover possession within ten years of the death of the life tenant; this upon the ground that the remedy by ejectment is not available until then. These decisions, in so far as they stop the running of the statute once begun, or defeat the title already acquired by adverse possession, should be overruled.

In *First Nat. Bank v. Pilger,* 78 Neb. 168, the plaintiff, who held under deed from the widow who had been awarded the homestead under the Baker decedent law, brought *quia timet* action against the heirs some months after the widow, life tenant, died. Ten years had elapsed since the widow's deed. The court quieted title in the plaintiff on grounds of adverse possession for ten years.

In *Helming v. Forrester,* 87 Neb. 438, a case like the last above mentioned, the cause was tried in equity, but recovery of possession asked for was had. Although ten years had elapsed since the widow's deed, it was held that the suit having been commenced within ten years from the time of the death of the life tenant, the statute had not run. Whether the heirs had any notice of the adverse possession during the lifetime of the life tenant does not appear.

In *McFarland v. Flack,* 87 Neb. 452, the remainderman began action to recover possession against another holding under a deed by the life tenant. More than ten years had elapsed since the adverse possession had begun, but not ten years since the death of the life tenant. The case was decided in favor of the remainderman. The opinion shows that there was no notice to the remainderman of the adverse possession during the life estate, except recording of the deed. In so far as this case could be construed to hold that the death of the life tenant would stop the running of the statute, already commenced, in favor of the adverse possessor, it should be overruled.

In *Maurer v. Reifschneider,* 89 Neb. 673, the remainderman brought *quia timet* action against the husband of the ancestor's widow, who had conveyed to him. This is the action mentioned above, wherein it was held that the statute begins to run when knowledge is clearly brought home to the remainderman that the life tenant claims the estate. See, also, *Larson v. Anderson,* 74 Neb. 361, to the same effect.

In *Bohrer v. Davis,* 94 Neb. 367, action to recover possession was brought against one holding by deed from the

widow who had taken the homestead under the Baker decedent law. More than ten years had elapsed since the time of the deed. Held (one judge dissenting) that the remainderman could bring action to recover possession within ten years after the death of the life tenant. This decision should be overruled in so far as it holds that the death of the life tenant may stop the running of the statute barring claim of title and allow the remainderman ten years' additional time in which to assert his title and recover possession.

The defendant contends, as we have said, that some of the plaintiffs are estopped from bringing this action for the reason that, in the proceedings in the district court for license to sell the land to pay debts, they assented to and requested the sale. The defendant's position is that when these heirs became of age it was their duty, within a reasonable time, to affirm or disaffirm this action upon their part. In our view, the defendant's contention is right. The evidence touching this point consists of the transcript from the district court showing the proceedings leading up to the administrator's sale of the real estate. It shows that such a consent was filed, signed by five of the heirs, aged from 15 to 21 years. The application for the sale of the real estate was first made by Andrew P. Hammond and the consent filed at that time. In the same action the application for license to sell was renewed by Stolp, the successor to Hammond, as administrator. This evidence raises a presumption, without other proof, that the document showing consent of the heirs was a genuine instrument. If so, it follows that upon reaching their majority it was the duty of those heirs to affirm or disaffirm their act within a reasonable time, failing to do which they would be estopped to claim title as against the purchaser. The evidence does not show that they disaffirmed, and, as to such heirs, the rule should be applied. *Foltz v. Maxwell, supra; Ward v. Laverty,* 19 Neb. 429; *O'Brien v. Gaslin,* 20 Neb. 347; *En-*

*glebert v. Troxell,* 40 Neb. 195; *Craig v. Van Bebber,* 100 Mo. 584, 18 Am. St. Rep. 569.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings according to law. .

REVERSED.