**WILHITE et al. v. YOUNT–LEE OIL CO. et al.**

No. 5468.

Court of Civil Appeals of Texas.

Texarkana.

May 6, 1940.

Rehearing Denied May 9, 1940.

D. B. Chapin, of San Antonio, for appellants.

Turner, Rodgers & Winn, of Dallas, Phillips, Trammell, Estes, Edwards & Orn, of Fort Worth, Strong, Moore & Strong, of Beaumont, F. J. Scurlock, of Dallas, Donald Campbell, of Tulsa, Okl., Joe E. Estes, of Fort Worth, Edwin Lacy, and Jack E. Price, both of Longview, Max R. Rosenfield, of Dallas, and Henry C. Walker, Jr., and James B. Henderson, both of Shreveport, La., for appellees.

JOHNSON, Chief Justice.

This suit was filed September 3, 1935, in the District Court of Upshur County by Job F. Wilhite and others who are the sole heirs of Hardy Wilhite and wife, Ollie Wilhite, both deceased, against Yount-Lee Oil Company, Stanolind Oil & Gas Company, Arkansas Fuel Company, J. C. McKinley, R. S. McKinley, D. B. Trammel, O. N. Houston, S. R. Houston, and Christelle Houston Erwin and husband, Barton E. Erwin, seeking to cancel a judgment entered January 10, 1916, in the District Court of Upshur County in cause No. 4041, styled Mrs. F. D. Futrell v. Ollie Wilhite et al., to recover eighty acres of land situated in Gregg County, a part of the survey patented to Wm. Robinson, and for an accounting of the oil produced from the land by defendants. The judgment in cause No. 4041 is one purporting to foreclose a vendor's lien on said land, executed by Hardy Wilhite. The validity of the judgment is attacked upon the alleged ground that plaintiff in said suit did not allege that there was no necessity for an administration upon the estate of said Hardy Wilhite, deceased; and that the citations were defective; and that the judgment did not dispose of all the parties to the suit.

The answers of the defendants contain general demurrer, special exceptions, general denial, pleas of not guilty, and specially pleaded 2, 3, 4, 5, 10 and 25 years' statutes of limitation, laches and stale demand, innocent purchaser, and improvements in good faith.

The trial of the cause to the court without a jury, upon an agreed statement of facts, resulted in judgment that plaintiffs take nothing. Plaintiffs have appealed.

The agreed statement of facts shows the following history of title involved. The eighty acres of land was part of a 212-acre tract owned, as their community property, by Samuel Houston, Jr., and wife, L. A. Houston. Samuel Houston, Jr., died intestate in 1905, survived by his wife, L. A. Houston and three children, O. N. Houston, S. R. Houston, and Christelle Houston Erwin, being the sole heirs of Samuel Houston, Jr. Mrs. L. A. Houston, by warranty deed dated April 11, 1906, filed April 20, 1906, conveyed the eighty acres of land to Hardy Wilhite in consideration of $349.09 cash, and the execution and delivery by Hardy Wilhite of his three notes, each in the principal sum of $128.50, payable to the order of Mrs. L. A. Houston, October 1, 1906, 1907, and 1908, respectively, bearing interest from date until paid at the rate of 10% per annum. The vendor's lien was expressly retained in each of the notes and in said deed. Hardy Wilhite and Ollie Wilhite were then husband and wife, and the interest conveyed by said deed became their community property. Upon receiving the deed Hardy Wilhite and his family entered into possession of the eighty acres of land, occupied, cultivated and used same as their home, until Hardy Wilhite's death, and thereafter Ollie and the children continued to occupy the land until ejected therefrom by execution of the judgment in said cause No. 4041. Before maturity and for value, the three vendor's lien notes executed by Hardy Wilhite, together with the vendor's liens securing same, were by Mrs. L. A. Houston assigned and delivered to Mrs. F. D. Futrell, a feme sole. On December 26, 1912, nothing having been paid on the principal or interest, said three notes were renewed by Hardy Wilhite executing and delivering to Mrs. F. D. Futrell one note for $667.39, due October 1, 1913, bearing interest from date until paid at the rate of 10% per annum, expressly acknowledging and retaining the vendor's lien.

Hardy Wilhite died intestate December 29, 1913. He was survived by his

widow, Ollie Wilhite, and eight children, Job, Jim, Luther, Lula, Louisiana, William, John, Sam, and two grandchildren, Herbert and Alberta Christian, who were the sole heirs of Hardy Wilhite. On August 4, 1914, Mrs. F. D. Futrell filed suit in the District Court of Upshur County against said surviving wife and heirs of Hardy Wilhite, to foreclose said vendor's lien, being cause No. 4041, styled Mrs. F. D. Futrell v. Ollie Wilhite et al. Final judgment was entered on January 10, 1916, foreclosing the vendor's lien and ordering the land sold as under execution in satisfaction of the judgment. Order of sale was duly issued, executed and the land sold to Mrs. F. D. Futrell. The sheriff's deed was delivered and Mrs. F. D. Futrell placed in actual possession of the land March 7, 1916. The deed was filed for record in Gregg County March 13, 1916. By warranty deed dated December 16, 1916, filed July 7, 1917, Mrs. Futrell conveyed the land to S. L. Keels, who immediately went into actual possession. By warranty deed dated January 31, 1920, filed May 26, 1930, O. N. Houston, S. R. Houston and Christelle Houston Erwin conveyed to S. L. Keels a ½ interest in and to said eighty acres, reserving ½ the minerals under same. By warranty deed dated January 31, 1920, filed May 26, 1930, S. L. Keels and wife conveyed the eighty acres to R. S. McKinley who immediately went into possession. By warranty deed dated May 8, 1930, filed May 26, 1930, R. S. McKinley and wife conveyed the land to J. C. McKinley, who immediately went into possession. By warranty deed dated April — 1931, filed May 10, 1933, J. C. McKinley conveyed an undivided ½ interest in the land to R. S. McKinley. The several mineral conveyances executed by J. C. and R. S. McKinley, and the Samuel Houston heirs, under which the remaining defendants claim are shown in the statement of facts, but it is not necessary to here set them out. It is further agreed that:

" * * * During all of said period of time, that is, commencing with the date the said Mrs. F. D. Futrell acquired said property on March 7, 1916, to the date this suit was filed on the 3rd day of September, 1935, said land was in the actual possession of the said Mrs. F. D. Futrell and her successors in title, and those under whom they claim and said parties fenced, used and cultivated said land, and the possession of said parties was notorious, open, peaceable, exclusive, continuous and without interruption. The said Mrs. F. D. Futrell, S. L. Keels and J. C. and R. S. McKinley, and those under whom said Keels and the McKinleys hold and claim have continuously since March 7, 1916, to the date this suit was filed on September 3, 1935, claimed the title to said tract of land as their own. Each of said parties bought said land in good faith, paid value, and thought they were purchasing a good title.

"After the said Mrs. F. D. Futrell acquired the property on March 7, 1916, as heretofore stated, she immediately placed a tenant on the property who cultivated a portion of the land and remained continuously in possession until she conveyed the property on December 16, 1916, to S. L. Keels. The said S. L. Keels upon acquiring title immediately placed a tenant in possession who lived thereon and fenced a portion of the property and cultivated same continuously until the property was sold to R. S. McKinley on January 31, 1920. The said R. S. McKinley and his brother, J. C. McKinley, who subsequently acquired an interest in the property, immediately placed tenants in possession of the property who remained on the property continuously until the filing of this suit on September 3, 1935. Shortly after the McKinleys acquired title, on January 31, 1920, their tenants completely inclosed the 80 acre tract and put in cultivation a large portion of same, and same was cultivated from year to year until this suit was instituted. The tenants of the McKinleys placed improvements on said property in the way of houses, barns and cross fences, for the McKinleys.

"All taxes were paid on said property by the party or parties in possession, before becoming delinquent, for the years 1920 to 1928 inclusive. The 1929 taxes were permitted to become delinquent and were paid on December 26, 1930. All taxes for 1930 to 1935, inclusive, were paid before becoming delinquent."

Determination of the issues attacking the validity of the judgment in cause No. 4041 is not necessary to a disposition of this appeal; for the reason that the judgment of the trial court in the present case is sustained upon the ground that appellees and those under whom they claim have acquired title to the land under both the five and ten years' statutes of limitation, R. S. Articles 5509 and 5510. So, in discuss-

ing the question of limitation, we will assume without affirming, that the judgment in cause No. 4041 is invalid, and for that reason the sheriff's deed thereunder was ineffective to pass title to Mrs. Futrell who purchased at the sale.

Appellants' contention is to the effect that Mrs. Futrell who purchased and entered into possession under an invalid foreclosure sale, and her successors, (appellees) may not acquire title by limitation, because, it is contended, equity would extend to them the right of a "mortgage in possession" in the respect of being entitled to demand the purchase money paid by them, less the revenues, as a prerequisite to being dispossessed by appellants; that since equity would have extended to Mrs. Futrell and her successors the right of a mortgagee in possession, therefore their possession must, as a matter of law, be regarded as in recognition of and not hostile to the rights of the debtor and his successors in title, appellants. The contention is not sustained. We do not think that a purchaser at an invalid foreclosure sale, and his successors, will be denied the legal right to acquire title by limitation on the ground that equity would extend to such purchaser and his successors the right of a mortgagee in possession, in the respect of making payment of their purchase price a prerequisite to being dispossessed by the debtor.

"A mortgagee in possession," in fact or strictly speaking, is a mortgagee who takes possession of the mortgaged land by virtue of the contract between him and the mortgagor. 41 C.J. 217. Having thus entered, with the consent and in recognition of the rights of the mortgagor, his possession (in the absence of a repudiation of the relationship) is not hostile to the debtor; and therefore will not ripen into a limitation title. It is the right of a mortgagee in possession to retain possession until his debt is paid. Such character of right has in some states been extended to, and the term "mortgagee in possession" is frequently used as a convenient phrase to describe the condition of one who has peaceably and lawfully acquired possession of the mortgaged premises under such circumstances as that equity will require payment of the debt a prerequisite to being dispossessed by the mortgagor, as where he purchases and enters under and in reliance upon an irregular or void foreclosure sale. "The Texas decisions extend the equitable right to third persons, as well as mortgagees, who purchase at void foreclosure proceedings, by treating the mortgage as still in effect and subrogating the purchaser to the rights of the mortgagee to the extent of the purchase money paid at the foreclosure sale." Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 1084, 115 A.L.R. 329. And, as stated in that case, the Supreme Court of Kansas (Stouffer v. Harlan, 68 Kan. 135, 74 P. 610, 64 L.R.A. 320, 104 Am.St.Rep. 396; Jaggar v. Plunkett, 81 Kan. 565, 106 P. 280, 25 L.R.A.,N.S., 935) has extended the equitable rule still further, reaching the conclusion that: "It is not essential to the status of a mortgagee in possession that possession should have been taken under the mortgage, nor with the consent of the mortgagor. It is enough if the possession be peaceably and legally acquired. * * * To be legal, the possession must have been taken in good faith, free from deceit, fraud, or wrong, and without violation of any contract relation with the mortgagor." The Texas decisions tend to support the more liberal rule above quoted.

Appellants could have (timely) sued and recovered the land from Mrs. Futrell and her successors. They offer no excuse for their delay in standing by for nineteen years and until the appellees had at great expense developed the property to the production of oil,—except the excuse now tendered as a proposition of law, to the effect that since equity would have extended to Mrs. Futrell and her successors the right of a mortgagee in possession, therefore their possession must, as a matter of law, (regardless of the undisputed facts to the contrary) be regarded as in recognition of and not hostile to the rights of appellants. The fact that Mrs. Futrell purchased and entered under an invalid foreclosure sale, in good faith believing that she had thus acquired title, did not make her and her successors "mortgagees in possession" within the pure meaning of that term, as above defined. They did not in fact take and hold possession under a contract with and in recognition of the rights of the debtor. Whether or not, if appellants have timely filed their suit, our courts would have, under the more liberal rule, extended to Mrs. Futrell and her successors the right of a mortgagee in possession in the respect of making payment of their purchase price a prerequisite to being dispossessed by appellants, is a matter not necessary to be decided in this case;

for the reason that should it be so affirmed, the holding would not include, nor is the equitable rule based upon, a forced presumption or conclusion as a matter of law that the entry and possession was in recognition of and not hostile to the rights of appellants.

It is claimed that Jasper State Bank v. Braswell, supra, supports the contentions here made by appellants. In that case the bank purchased and entered under a foreclosure sale which was invalid as to the interest of one of the mortgagors, Mrs. Braswell, because she was not made a party to the proceedings. The possession of the bank was held lawful and the equitable right of the mortgagee in possession was extended to it, and Mrs. Braswell was required to pay her portion of the debt as a prerequisite to a recovery by her of her interest in the land,—notwithstanding the fact that the bank's possession was not in recognition of the rights of Mrs. Braswell. But that decision is not based upon any character of legal fiction striking down the true facts and substituting in lieu thereof a presumption that the bank's possession was in recognition of Mrs. Braswell's rights. The decision simply holds that the fact that the bank's possession was not in recognition of Mrs. Braswell's rights did not necessarily make such possession unlawful. We do not find anything said in that case, or any other case called to our attention, which supports appellants' conclusion that because the possession of a purchaser under an invalid foreclosure sale may be held lawful in the sense that the equitable rights of a mortgagee in possession will be extended to him, therefore his possession must, as a matter of law, be held in recognition of and not hostile to the rights of the judgment debtor.

In the case of Hendron v. Yount-Lee Oil Co., Tex.Civ.App., 119 S.W.2d 171, writ refused, this court upon facts not materially different from the facts of this case refused to sustain the same contention as here presented by appellants. To the authorities cited in that case we add the following: Martinez v. Logan, Tex.Civ. App., 222 S.W. 611; Goodman v. Nichols, 44 Kan. 22, 23 P. 957; McNeill v. Schumaker, 94 Neb. 544, 143 N.W. 805; Hall v. Hooper, 47 Neb. 111, 66 N.W. 33; 2 C.J.S., Adverse Possession, p. 611, § 73, Sub-section b, and authorities there cited.

The judgment of the trial court is affirmed.