## Duncan, et al. v. King's Administrator.

(Decided March 17, 1915.)

### Appeal from McLean Circuit Court.

1. Wills—Construction.—Under a will which devises to the testator's young married daughter her portion of his estate in trust for her children, and which provides that in the event of her death the property so devised shall be held in trust by his son for the benefit of her children, the daughter took a life estate and her children a fee in remainder.

2. Limitation of Actions—Remaindermen.—The statutes of limitation do not begin to run against remaindermen until the expiration of the life estate, although the remaindermen may before such expiration go into equity and have their title in remainder quieted as against an adverse claim.

LA VEGA CLEMENTS and B. D. RINGO for appellants, Zoe G. Duncan, et al.; R. ALEXANDER for appellant, McClellan.

J. H. MILLER and LITTLE & SLACK for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

In 1909 W. S. King, since deceased, conveyed to A. S. McClellan a tract of 131 acres of land in McLean County with covenant of general warranty. This is an action by King's administrator against McClellan seeking to enforce by sale of the land the collection of certain purchase notes then executed by McClellan, and which were a purchase money lien on the land.

McClellan answered, setting up that King had conveyed him the land with covenant of general warranty, and that there had been a failure of title and a breach of warranty in that King only held title to the land for and during the life of Mary A. Glenn, a daughter of Solomon Howard, deceased, who by the provisions of his will had given to her only a life estate therein, with remainder to her children; and he made his answer a cross-petition against the children of Mary A. Glenn, and asked that they be required to assert any claim that they might have in the land.

The appellants, Duncan and others, the children of Mary A. Glenn, came into the action and asserted their claim to the land in remainder subject to the life estate

of Mary A. Glenn, and rely upon the provisions of the will of Solomon Howard, their grandfather.

Solomon Howard died in January, 1857, having first made and published his last will and testament, which was probated in the McLean County Court in February, 1857. He left surviving him his widow, Hannah Howard, and three children, Rufus S. Howard, W. L. D. Howard, and Mary A. Glenn, the latter at the time being a young married woman about twenty years of age, with one living child.

The provisions of Solomon Howard's will, under which appellants claim, are as follows:

"4th. I will to my beloved wife, Hannah Howard, all land, every species of property which I may own at my death, both and real and personal, to her during her natural life, if she remains a widow.

"7th. It is my wish that at the death or marriage of my wife that my whole estate, both real and personal (except the two negroes willed to my wife), be equally divided between my three children, Rufus S. Howard, W. L. D. Howard, and Mary A. Glenn, and it is also my will that my daughter, Mary A. Glenn, hold the money and property which may be her portion only in trust for her children which she now has or may hereafter have. "* * * I having only one daughter I feel desirous to provide and secure to her heirs the small pittance I as their grandparent can give or leave them.

"8th. In the event of the death of my daughter, Mary A. Glenn, and the death of her heirs, I will that the whole of my property above bequeathed to said Mary A. Glenn in trust be equally divided between my two sons or their heirs."

This will was dated June 15th, 1855, but, on the 7th of September, 1855, he added a codicil thereto, which, in so far as it is necessary to quote, is as follows:

"It is my wish that in the event of the death of my daughter, Mary A. Glenn, that the whole of the property herein bequeathed to her shall be taken possession of and kept by my son, Walter L. D. Howard, in trust for the use and benefit of the heirs or children of the said Mary A. Glenn."

After the death of Solomon Howard in a partition between his children the 131 acres of land now in controversy was allotted to Mary A. Glenn, and thereafter, in May, 1864, Mary A. Glenn and her husband and her

mother, Hannah Howard, undertook to convey the fee simple title therein to William Brooks, and shortly thereafter Brooks and his wife undertook to convey the fee simple title in the same to Washington King, who took possession of the land and held the same until his death in 1908; but after his death, in a conveyance by his heirs, W. S. King became the title holder, and he in turn undertook to convey the same to McClellan, as above stated.

Mary A. Glenn, the daughter of Solomon Howard, and the mother of the appellants, is still living, and it is agreed of record that W. H. Brooks, the vendee in 1864 of Mary A. Glenn and others, and his vendees have since had continuous and uninterrupted possession of the land.

The lower court adjudged that McClellan took a fee simple title under his deed from W. S. King, and from that judgment McClellan and the children of Mary A. Glenn have appealed.

Two questions are presented for decision: (1) What estate, if any did the children of Mary A. Glenn take under the will of Solomon Howard; and (2) even if they took the remainder interest, are they barred by the statutes of limitation?

Guided by the intention of the testator as gathered from the language of the instrument, as well as by the situation of the parties and their relation to each other, it is apparent that he intended that after the death of his wife one-third of his property should go to Mrs. Glenn for her life and ultimately to her children in fee. The testator had but one daughter, and she a young married woman with one child at the time the will was written, and he evidently contemplated that she would have others; his daughter was only twenty years of age, and could have been married only a short time, and the testator, possibly not having implicit confidence in the business ability of her young husband, designed by his will to secure her portion of his estate to her children. But, under the circumstances, and under the language used, it cannot be held to have been a direct devise to the children or to their mother in trust for them; on the contrary, it seems to have been in the mind of the testator to so dispose of his property as to enable his young married daughter to properly provide for herself and her children. That Mary A. Glenn under the will took a life estate in the property subject to her mother's life

estate with remainder in fee to her children cannot be doubted.

The lower court was of opinion, and so adjudged, that the rights of the children of Mary A. Glenn were barred by the statute of limitation, and that is the only remaining question.

Mary A. Glenn, the holder of the life estate, is still living, and the right of her children as remaindermen to enter upon the land so devised to them in remainder by their grandfather has never accrued and cannot accrue until the death of Mary A. Glenn.

It has often and consistently been held by this court that the statutes of limitation do not begin to run against remaindermen until the expiration of the life estate. While the remaindermen may go into equity and have their title in remainder quieted even before the expiration of the life estate, yet their right to enter upon the property or to claim possession of it does not ripen until the death of the life tenant, and that being true no statute of limitation begins to run against them until such time as they may demand possession or can assert their right of entry.

The case of Ratterman v. Apperson, Exor., 141 Ky., 821, was where one James Wren died leaving a will by which he devised his property to his wife for life, and made no disposition of it in remainder, thereby dying intestate as to the remainder interest. His father, Thomas Wren, was his only heir-at-law, and although his widow and her vendees held the property for longer than the statutory period, it was held that the statute did not begin to run until the death of the life tenant. The court, in discussing this question of limitation as against the holder of the remainder interest, said:

"It is true that the purchaser of the property and those claiming under him, had held it for more than fifteen years when this suit was brought, claiming it as their own, and supposing that they had a perfect title to it. But as the life tenant was still living they can not defend against the remainderman on the ground of limitation. Section 2505, Kentucky Statutes, provides:

" 'An action for the recovery of real property can only be brought within fifteen years after the right to institute it first accrued to the plaintiff or to the person through whom he claims.'

"The remaindermen are the plaintiffs here. Their cause of action to recover the property did not accrue to them during the life of the life tenant, and, although the person in possession may in fact claim adversely, and hold the property believing it is his own for fifteen years, the statute does not begin to run against the remaindermen until the death of the life tenant. (Keller v. Stanley, 86 Ky., 245; Jefferies v. Butler, 108 Ky., 531; Penn v. Rhodes, 124 Ky., 798, and cases cited.) The life tenant is still living. This is a suit, not to recover the property, but to quiet the plaintiff's title to it in remainder. It is insisted that the suit might have been brought fifteen years ago, and is, therefore, barred by limitation. In answer to this, in Keller v. Stanley, 86 Ky., 245, the court said:

"'It has been held that limitation does not during the existence of the particular estate run in favor of the tenant for life against the owner of the estate in remainder; and that being so, it would seem that an action to quiet his title might be maintained by the latter at any time before the termination of the life estate. For it is difficult to understand how the right to quiet title, or establish a claim to land, may be barred by limitation, while the right to recover the same land may exist for an indefinite period afterwards.'"

That case and the statute quoted therein, together with the authorities cited, is conclusive of the question that no statute of limitation begins to run against a remainderman until the death of the life tenant.

For the reasons given the judgment is reversed, with directions to enter a judgment quieting the title of the children of Mary A. Glenn to the land in question, subject to her life estate.