MARIA BRETSCHNEIDER, APPELLANT, V. FARMERS NATIONAL BANK OF MADISON ET AL., APPELLEES.

FILED JULY 14, 1936. No. 29623.

*Willis E. Reed* and *G. N. Anderson,* for appellant.

*M. B. Foster* and *Moyer & Moyer, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and FITZGERALD, District Judge.

PAINE, J.

This is a suit to quiet title in the plaintiff in 480 acres of land in Madison county, Nebraska. The trial court decreed that the plaintiff had only a life estate therein. She appeals to reverse this decree.

The plaintiff and appellant sets out, in 58 pages of her brief, 184 separate propositions of law, with many authorities under each which are relied upon for reversal. While many of these would be interesting to discuss, it cannot be done without extending this opinion to undue length. We will simply content ourselves by saying that we have examined all of the propositions of law set forth in the exhaustive brief. The salient facts in the case, as found in the bill of exceptions, will be set forth, to be followed by a discussion of a very few propositions of law which we believe will determine all of the issues involved.

All of the parties herein admit that the title to this 480 acres in question was vested in the husband, Moritz Bretschneider, who died December 2, 1913, leaving a will which he had executed June 3, 1897. Omitting the introductory and concluding clauses of the will, the body thereof reads as follows:

"First: I direct that my funeral charges, the expenses of administering my estate and all my debts be paid out of my personal property. If that be insufficient I authorize my wife to sell so much of my real estate as may be necessary for that purpose.

"Second: I give and bequeath all of my estate, real and personal, to my beloved wife, Maria Bretschneider, upon the following condition, that as long as she remains my

widow she is to have all of my estate, both real and personal, but if she shall die or marry again during the infancy of my two children, Paul Bretschneider and Arno Bretschneider, then in that case all of the estate, personal and real, shall descend to my children above named in equal shares. It is my will and the intention of this will is, that all of my property both real and personal shall go to my two children, Paul and Arno. In no way shall any act of my wife deprive my children of all my property."

The will did not appoint an executor, and on January 10, 1914, said will was admitted to probate and letters of administration were issued to the son, Paul Bretschneider.

The plaintiff alleges in the second amended petition that she entered into the possession of said land on December 2, 1913, as the owner of said premises, and ever since said time has continued in open, notorious, actual, continuous, exclusive, hostile, and adverse possession, and claims to be the sole owner in fee simple of said land by reason of the terms of the will and adverse possession for more than 30 years last past, and further alleges that she "now is, occupying, living upon and using the W½ of section 3, township 22, range 1, Madison county, Nebraska, as a home and homestead." Said second amended petition further alleges that on November 8, 1933, Arno Bretschneider and his wife gave a mortgage of $2,500 to the Farmers National Bank upon said 480 acres of land, and that Adolph Behlen obtained a mortgage on the same date from the same parties upon the same land for $1,000, and that on April 24, 1933, Charles Hartner obtained a mortgage from the same parties upon the same land for $467.90, and on January 3, 1931, Emma Klug obtained a judgment against Arno Bretschneider for $163.15, which is a lien upon the same title, and that the Madison National Bank revived a judgment on August 13, 1926, against Arno Bretschneider upon the same land, which is a cloud upon the plaintiff's property, and the plaintiff prayed that each and all of said mortgages and judgments be declared null and void, and not to constitute a cloud upon the title of the plaintiff in the 480 acres of land,

and that a decree be entered forever quieting the fee title in said land in the plaintiff. The trial court entered a decree finding that the plaintiff was the owner of a life estate in and to said real estate, and that no one of the defendants has any right, title, interest, or lien in any way affecting the life interest of the plaintiff in and to said title.

The fact should be stated also that on March 5, 1934, Arno Bretschneider, one of the sons, filed a voluntary petition in bankruptcy, and was adjudicated bankrupt the next day. He lists in his petition taxes due, $11.11, and ten secured creditors, with claims amounting to $5,409.56, seven of them having mortgages upon his personal property, and three with mortgages on the real estate hereinbefore set out. He also lists 48 unsecured creditors, to whom he owes $2,695.83. He claims to have assets of $776.50 in personal property, but claims to own no interest in any land. His attorney who filed the bankruptcy petition is Willis E. Reed, one of the attorneys for the plaintiff herein, and George Moyer was appointed trustee.

Plaintiff insists that the will set out above is governed by the finding of this court in *Little v. Giles,* 25 Neb. 313, 41 N. W. 186; *Giles v. Little,* 104 U. S. 291. But that will provided that, if the widow should remarry, then all of his estate, *or whatever may remain,* should go to the surviving children. Again, in *Anderson v. Anderson,* 119 Neb. 381, 229 N. W. 124, relied upon by the plaintiff: In this opinion we find a quotation from Thompson, Construction of Wills, 515, sec. 382: "Where the devise is to the wife 'so long as she remains my widow,' with a limitation over of the remainder 'after the remarriage' and also 'after the death' of the wife, she takes a life estate only."

This is the exact situation in the case at bar, for it is stated clearly: "It is my will * * * that all of my property both real and personal shall go to my two children, Paul and Arno. In no way shall any act of my wife deprive my children of all my property." This is the last statement of the testator, this court is bound by it, and clearly the plaintiff, having never remarried, has a life estate. The plaintiff

claims that this last paragraph of the will is inoperative, because in the first paragraph he had given the fee to his widow to sell to pay debts, and states as her thirty-sixth proposition of law: "Where there is a clear devise of a fee simple, the attempted gift over is void and the clear fee simple will not be cut down by such void remainder or gift over;" and, as the fifty-second proposition of law states: "Where property is given in clear language sufficient to convey an absolute fee, the interest thus given shall not be taken away or diminished by any subsequent ambiguous, vague or general expressions in the will." In support thereof, plaintiff cites many cases from Connecticut, Iowa, Indiana, Kentucky, Maine, Maryland, New Jersey, New York, Massachusetts, Ohio, Pennsylvania, and a number of other states. Without going so far afield, we find that Judge Sedgwick, in *Grant v. Hover,* 103 Neb. 730, 174 N. W. 317, said: "The statement in *Loosing v. Loosing,* 85 Neb. 66, 'If a testator in his will devises an estate in fee simple, a subsequent clause attempting to devise over any part of that estate is void,' is not approved." In the later case of *Hiles v. Benton,* 111 Neb. 557, 196 N. W. 903, this language is used: "We are not bound by the view that certain technical words in wills * * * which import a fee will be held controlling so as to peremptorily discard whatever words of qualification may follow." The latest case in point is *Merrill v. Pardun,* 125 Neb. 701, 251 N. W. 834. Also, see 3 Neb. Law Bulletin, 291, which discusses this question, *In re Estate of Curtis,* 123 Neb. 97, 242 N. W. 257, and *Martley v. Martley,* 77 Neb. 163, 108 N. W. 979.

We will next consider plaintiff's propositions of law relating to plaintiff having acquired title by adverse possession, which is stated in many different forms, of which we select this as typical: "168. According to the weight of authority the possession of the widow, although not in hostility to the heirs, may be converted into an adverse holding which will ripen into title if continued for the statutory period."

Without discussing the dozens of cases cited from other

states, we will confine ourselves to a few pertinent Nebraska decisions. In *Maurer v. Reifschneider,* 89 Neb. 673, 132 N. W. 197, it is said: "Where a person is entitled to the possession of land by virtue of having a life estate therein, his possession will not be construed to be hostile and adverse to that of the remaindermen, unless the knowledge is clearly brought home to them that the person in possession claims the entire title in his own right, adverse and hostile to any claims of interest in the land by the remaindermen or others claiming through them." See, also, *Anderson v. Miller,* 103 Neb. 549, 172 N. W. 688; *Criswell v. Criswell,* 101 Neb. 349, 163 N. W. 302.

The plaintiff, under her life estate, had the full, complete, and absolute right of possession of this land. The two sons, who owned the fee under their father's will, had no right of entry on the place adverse to their mother, and their relations were very friendly. One son, Arno, has been living on the place under his mother for years, and recently gave three real estate mortgages on his interest therein, subject to his mother's life estate; and Paul, the other son, signs the leases to the mother's other tenant on the other place.

The plaintiff, in the very nature of things, could not forfeit her life estate simply by claiming a fee to this property. Nebraska has a statute, section 76-401, Comp. St. 1929, which allows any person to bring action to test their title to any real estate, and she had a perfect right to test out her interests, but the evidence in no way supports her allegations of holding the property adversely. We find no prejudicial errors, and, therefore, the decree of the lower court is hereby

AFFIRMED.