LAUREL ANN MAXWELL, APPELLEE, V. HAZEL V. HAMEL ET AL., APPELLANTS: LEONARD HAMEL ET AL., APPELLEES.

292 N. W. 38

FILED MAY 3, 1940.  No. 30781.

*Wagner, Wagner & Albert, August Wagner* and *C. N. McElfresh,* for appellants.

*Sidner, Lee & Gunderson, Franklin L. Pierce* and *Philip M: Wellman, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This action is based upon plaintiff's claim of ownership of a one-fourth interest in 76 acres of Platte county land. Plaintiff prays for a determination of "the rights of the respective parties in and to said premises," for partition, an accounting of rents and profit, a cancelation of liens, and for equitable relief. The defendant Hazel V. Hamel claims to own by adverse possession and prays that her title be quieted. The defendant Loup River Public Power District holds an easement received from the defendant Hamel. The defendant Federal Land Bank of Omaha claims a mortgage lien given by the defendant Hamel. The trial court found in favor of the plaintiff. Defendants Hamel and the Power District appeal.

In 1884 the land here involved was conveyed to Willis G. Decker, Sr., and *Katie* Decker. The deed was recorded at that time. The land was their homestead. The plaintiff is one of the two children of these parties. Katie Decker died in 1892. Willis G. Decker, Sr., became the owner of an estate for life in the premises, and the plaintiff and her brother, Willis G. Decker, Jr., each inherited an undivided one-fourth interest therein subject to their father's life estate. The plaintiff was 17 months old at the time of her mother's death. About 1894 Willis G. Decker, Sr.,

remarried, his second wife's given name being *Catherine*. The defendant Hazel V. Hamel (hereinafter called the defendant) is the child of the second marriage.

March 1, 1920, the defendant and her husband went into possession as tenants of defendant's father, her parents having moved to town. August 21, 1920, Willis G. Decker, Sr., and *Catherine*, his wife, executed a warranty deed purporting to convey the entire premises to the defendant. Said deed recites: "This deed is subject to the following encumbrance, to wit: A certain lease given by Willis Decker to Hazel V. Hamel, running from August 1, 1920, until the death of said Willis Decker, bearing an annual payment of $500 rent, which said encumbrance the grantee in this deed assumes and agrees to pay," and "also subject to the taxes for the year 1920 and thereafter." The deed was recorded August 23, 1920. The "certain lease" was not produced and its general contents not revealed. At the same time, a similar lease and deed were made to Willis G. Decker, Jr., for other land. The defendant has been in possession continuously since 1920. In 1920 and thereafter the defendant made extensive repairs to the improvements and put new ones thereon at a cost of $920. Likewise, the defendant paid the taxes, insured the premises, made the annual payments to her father, etc. It appears that, under the "certain lease," she was to pay the taxes, and it may fairly be determined from the testimony of the defendant and Willis G. Decker, Jr., that the lease required the defendant to insure and keep the buildings in repair. Although the defendant testified that after the deed was executed she remained in possession under the lease, the evidence shows that the father had nothing to do with the farm after 1920, and that the lease did not say what the father could do in case of default. The father, Willis G. Decker, Sr., died September 11, 1931.

The plaintiff knew of the deed in 1920 and that the defendant was in possession, repairing and making new improvements, and farming the land. There is evidence by the defendant, denied by the plaintiff, that, shortly

after the deed was given, the plaintiff protested the conveyance to the defendant and "wondered where she" (the plaintiff) "came in." The defendant mortgaged the land to the Land Bank in 1933 and granted an easement to the Power District in 1937. In 1938 an effort was made by the defendant to secure an additional loan, and it was then discovered, for the first time, so far as any of the parties to this litigation are concerned, that *Katie* Decker died seised of an undivided one-half interest in this land, and that plaintiff had inherited an undivided one-fourth interest therein. This litigation has resulted.

The right of the plaintiff by inheritance to the undivided interest in this property is admitted. What rights to the property did the defendant receive by the deed of 1920? At the time of his conveyance to the defendant in 1920, the father was the owner of an undivided one-half interest in fee and the owner of a life estate in the remaining one-half interest. By the provisions of section 76-106, Comp. St. 1929, every conveyance of real estate passes all the interest of the grantor therein unless a contrary intent can reasonably be inferred from the terms used. By the provisions of section 76-109, Comp. St. 1929, it is the duty of the court to determine from the whole instrument the true intent of the parties and to carry that intent into effect, so far as such intent is consistent with the rules of law. See *Blochowitz v. Blochowitz,* 130 Neb. 789, 266 N. W. 644. The conveyance here was by general warranty deed. A life estate was not reserved. A certain lease calling for "an annual payment of $500 rent" until the death of the grantor was an "encumbrance" upon the land which the grantee (defendant) assumed and agreed to pay. This charge became a lien on the real estate. See *Bankers Life Ins. Co. v. Ohrt,* 131 Neb. 858, 270 N. W. 497. It is not apparent that the "annual payment" bore any fixed relationship to the value of the life estate of the grantor. There is testimony that the defendant, having entered possession as a tenant, continued in possession after August, 1920, under the lease referred to in the deed.

That evidence, however, is in the nature of a conclusion on the witness' part. The testimony also is that the father did not "have anything more to do" with the land after the deed of 1920. We conclude that the effect of the conveyance of 1920 was that the defendant received a fee title to an undivided one-half interest and the grantor's life estate in the other one-half interest, all subject to the lien of the annual rent charge of $500, and that the defendant held possession thereafter under that conveyance.

The evidence establishes that all parties acted in good faith, that the father intended that the defendant should have this property to the exclusion of the plaintiff, and that the defendant accepted the conveyance and went into possession with like intent.

This action was commenced in January, 1939. Defendant filed her answer in February, 1939. It is apparent, therefore, that, in order to establish adverse possession for a period of ten years or more, defendant must tack her possession since the death of her father onto her possession prior thereto, or base it upon the alleged adverse possession during the period of the existence of the life tenancy.

The question to be determined then is: Can a party holding real estate by permissive possession under a conveyance from a life tenant hold adversely as against the remainderman during the period of the life tenancy, where both the remainderman and the alleged adverse possessor are without actual notice of the rights of the remainderman in the premises?

Under section 20-202, Comp. St. 1929, an action for recovery of title to, or possession of, lands can only be brought within ten years after the cause of action has accrued. *Parkin v. Parkin*, 123 Neb. 836, 244 N. W. 638.

When did plaintiff's cause of action accrue?

Section 76-401, Comp. St. 1929, clearly gives to a party claiming an interest in real property the right to bring an action to quiet title whether the party is in or out of possession. *Morse v. Cochran*, 131 Neb. 424, 268 N. W. 307.

Section 76-406, Comp. St. 1929, provides: "Any person

or persons having an interest in remainder or reversion in real estate shall be entitled to all the rights and benefits of this act." This section gives the right to remaindermen to bring the action during the existence of the life estate, for, after that time, they will not be remaindermen.

Similar statutory provisions, somewhat more restricted than sections 76-401 and 76-406, Comp. St. 1929, were before this court in *Foree v. Stubbs*, 41 Neb. 271, 59 N. W. 798. It was there pointed out that "any person claiming title to real property in this state, whether in or out of possession, may maintain an action against any person or persons claiming adversely, for the purpose of determining such estate and quieting title." The rule there announced has been repeatedly followed by this court. In *Hall v. Hooper*, 47 Neb. 111, 66 N. W. 33, it was held: "Such an action may be maintained by a remainderman during the continuance of the particular estate." This holding has also been repeatedly followed by this court.

It follows that plaintiff had the right to bring an action to quiet title during the period beginning with August, 1920. She then had knowledge of the deed and the possession of the defendant, who, believing she held full title, subject to the payments to her father, was making improvements and exercising every right of an owner. However, such an action, had it been brought prior to the father's death, could have established only the fact that plaintiff had a remainder interest in the property, and that right is one which is not and could not have been questioned.

All parties cite and "confidently" rely upon the case of *Criswell v. Criswell*, 101 Neb. 349, 163 N. W. 302.

Because of its application to this case, and for the benefit of the profession generally in determining the consideration to be given to adjudicated cases, it may be well to state the proper weight to be given to syllabus and statements of law made in the opinions of this court.

A judge, in writing an opinion, must be permitted a certain latitude in stating his reasons for the conclusions

that are reached. It quite often happens that statements are made and conclusions announced in the body of an opinion that are not necessary for a decision of the questions presented and are not directly applicable thereto. These statements are also sometimes carried in the syllabus of the case, which is prepared by the writer of the opinion. Writers of opinions endeavor to prevent those occurrences. When they do occur, they are not considered to be controlling, although they are often helpful and likewise are often later adopted by the court by subsequent reference thereto. Because of these situations, there have evolved the rules now followed by this court, to wit: As precedents, the controlling features of an opinion are the rules of law necessarily reached and stated in determining the issues presented based upon the facts found in the record. The opinion controls the syllabus, the latter being merely explanatory of the former and having no more force and effect than the statements made in the opinion upon which they are based.

Discussions of these matters will be found in *Holliday v. Brown*, 34 Neb. 232, 51 N. W. 839; *Williams v. Miles*, 68 Neb. 479, 96 N. W. 151; *Brumbaugh v. Jones*, 70 Neb. 786, 98 N. W. 54; *Dempster v. Ashton*, 125 Neb. 535, 250 N. W. 917; *Douglas County v. Vinsonhaler*, 82 Neb. 810, 818, 118 N. W. 1058; *Mathews v. Hedlund*, 82 Neb. 825, 833, 119 N. W. 17; *Reams v. Clopine*, 121 Neb. 86, 236 N. W. 158; *Carlsen v. State*, 129 Neb. 84, 92, 261 N. W. 339.

In the *Criswell* case, *supra*, the party claiming title by adverse possession was the purchaser at an administrator's sale; he was a stranger to the title and did not enter by virtue of the widow's life tenancy; and the deed was void because the land was a part of the homestead. The defendant had been in possession, and the life tenant had been out of possession, for over 23 years. The action was brought within ten years of the death of the owner of the life estate, some of the heirs suing to recover possession, others to quiet title and for rents and profits. Three of the children who had not been of age for 10 years when the

action was brought asked to have title quieted in them. As to them, it was agreed that the statute of limitations had not run. As to other heirs, more than 10 years had elapsed since they became of age, and it was admitted that an action to quiet title was barred as to them. This last group of heirs asked a recovery of the land. The plaintiffs contended that their action to recover possession was not barred until 10 years after the death of the life tenant. That was the controversy. The distinction between the *Criswell* case and the instant case is apparent.

The holding made in determining this feature of the action was that, where land is held by a stranger to the title, his possession is construed to be hostile and adverse to the remaindermen so as to commence the running of the statute barring action for the recovery of title or possession from the time the remainderman knows that the possessor claims the entire estate in his own right, or from the time when, in the exercise of reasonable care for his own rights, he should have known that the land was so held by the one in possession.

It is obvious that statements in the opinion concerning contests between a remainderman and a life tenant, or one in privity with the life tenant, are discussions of matters not then before the court for decision, and are not precedents in this action.

The plaintiff relies upon the following cases to establish her contention that the possession of the holder of the life estate and his grantee will not be construed to be hostile and adverse to that of the remainderman until such knowledge is clearly brought home to the remainderman. *Maurer v. Reifschneider*, 89 Neb. 673, 132 N. W. 197; *Anderson v. Miller*, 103 Neb. 549, 172 N. W. 688; *Bretschneider v. Farmers Nat. Bank*, 131 Neb. 495, 268 N. W. 278. The plaintiff relies upon *Criswell v. Criswell, supra,* to establish the rule that "the presumption of fact is that the possession of the life tenant, or one holding under or through the life tenant, is lawful and not adverse;" and upon *Chase v. Lavelle*, 105 Neb. 796, 181 N. W. 936, to establish the rule

that, "as between parties sustaining parental and filial relations, the possession of the land of the one by the other is presumed to be permissive, and not adverse. To make such possession adverse, there must be some open assertion of hostile title other than mere possession, and knowledge thereof brought home to the owner of the land." The plaintiff further relies upon *Bohrer v. Davis,* 94 Neb. 367, 143 N. W. 209, and in particular upon the statement in the first paragraph of the syllabus.

The defendant relies upon the following cases to establish her contention that the plaintiff's action could have been brought in 1920, and that, under the facts here, the statute began to run against the plaintiff's action at that time. *First Nat. Bank of Perry v. Pilger,* 78 Neb. 168, 110 N. W. 704; *Lyons v. Carr,* 77 Neb. 883, 110 N. W. 705; *Criswell v. Criswell, supra,* and Nebraska cases cited and discussed therein.

The defendant states that *Criswell v. Criswell, supra,* is "a complete brief on behalf of the defendants," and relies upon the general holding in *Criswell v. Criswell, supra,* upon statements therein, and in particular, upon the proposition that said case establishes that the statute begins to run against the remainderman from the time he knows, or in the exercise of reasonable care should have known, that the land was being held adversely.

It is apparent that confusion existed in the opinions of this court on this question prior to the decision in the *Criswell* case. See articles by Dean Henry H. Foster of the University of Nebraska College of Law, 3 Neb. Law Bulletin, 397-399, and Prof. William P. Sternberg of Creighton University, 17 Neb. Law Bulletin, 348-349. When the *Criswell* case is properly weighed, under the rule here announced, it is apparent that that conflict still exists. It must also be recognized that the *Criswell* case states the minority rule if defendant's construction is accepted.

All of our decisions have been fully reviewed. We are convinced that sound reasoning and justice alike require that the law on the question here presented be restated in this state.

Restatement, Property, 893, states the proposition as follows:

"Future interests present a dilemma in the law of limitation of actions. If the courts focus their attention upon the protection of future interest holders by refusing to permit the statutory period to run against them until their estates become present interests, the effectiveness of the statutes as means of quieting titles is greatly impaired. On the other hand, if the focus is upon the security of long continued possession, it is certain that some holders of future interests will lose their estates through adverse claims of which they have never had knowledge. Predominantly the courts have chosen to give full protection to future interest holders, although, as indicated in secs. 226 and 227, some concessions to the security of adverse possessory claims have been made. In a very few states this trend has been reversed by statutes declaring a *bona fide* claimant under certain circumstances to be 'the legal owner' at the end of the statutory period (sec. 220, Comment *c*) and by decisions that a right of action to quiet title causes the statutory period to commence running even though the person having the right of action owns only a future interest (see sec. 222, Comment *d*, stating the law to be contrary to these decisions). These few statutes and decisions may indicate a tendency to reexamine the major premises of the law of limitations as applied to future interests, but at the present time they have not enlisted sufficient support to be treated otherwise than as variations from current practice and opinion."

We note further that in the Tentative Draft No. 6 of Restatement, Property, 152, the authors recognized that Nebraska and Iowa had reached a result contrary to that announced as the rule in the final draft of the Restatement (citing *First Nat. Bank of Perry v. Pilger, supra*) and *Murray v. Quigley*, 119 Ia. 6, 92 N. W. 869, and *Crawford v. Meis*, 123 Ia. 610, 99 N. W. 186. These Iowa cases will be referred to later herein.

Defendant's contention is that, since plaintiff had the

right to bring an action to quiet title (Comp. St. 1929, sec. 46-401) beginning in 1920, her cause of action arose at that time, and hence is barred by the statute of limitations. This contention is fully answered in Restatement, Property, 902, sec. 222:

"Frequently the owner of a future interest as such can establish his ownership by a suit in equity to quiet title or to remove a cloud upon title or by analogous statutory proceedings legal or equitable. It might be reasoned that this fact should require him to avail himself of these rights of action and that the statutory period should thenceforth run, not only upon these equitable and statutory proceedings, but also upon the action of ejectment which might be brought when the interest becomes present. However, these equitable and statutory proceedings are considered to be created for the additional protection of the owner of the future interest; and to hold that their existence causes the statute of limitations to run upon ejectment proceedings would in considerable measure reduce the protection accorded to the future interest holder when his estate becomes present. It is therefore immaterial in computing the statutory period in an action of ejectment or similar proceeding that, before the plaintiff's estate became a present interest, he could have brought suit to quiet title or to remove cloud on title or could have commenced a statutory proceeding analogous to one of these."

Statutes authorizing parties to bring action to quiet title are enabling acts (4 Pomeroy, Equity Jurisprudence, 3310, sec. 1397; 51 C. J. 136); where authorizing suit by one out of possession they are intended to enlarge and extend the equitable remedy (51 C. J. 139); and they are not penal, restrictive nor destructive (*Armor v. Frey*, 253 Mo. 447, 474, 161 S. W. 829).

In *Armor v. Frey, supra*, the supreme court of Missouri had a case where it was contended that remaindermen, not under disability, who failed to sue to quiet title within ten years after their right to bring such suit accrued, were barred of their estate in remainder. The court refused to

follow *Murray v. Quigley, supra,* and *Crawford v. Meis, supra* (followed in *First Nat. Bank of Perry v. Pilger, supra*), and pointed out that the proceeding to quiet title is an action wherein the court is asked "to ascertain and determine, define and adjudge the title, estate and interest of the parties. It does not ask for the recovery of real estate or the possession thereof. It does not ask affirmative relief. It seeks simply an ascertainment of the *status quo* of the title * * * to the property. * * * the mere failure for ten years to sue under the statute after the right to sue has accrued does not bar the right to so proceed thereafter, and such failure of a remainderman does not bar his estate in remainder." (Pages 475, 476.)

In *Hayden v. Hill,* 128 Ark. 342, 194 S. W. 19, it was contended that an action by a remainderman was barred because he could have brought an action to establish his title during the life tenancy. The court held that the statute was a practice act, referring to the sufficiency of the evidence, and was not a statute of limitations. The court further said: "* * * the right of entry, and therefore the right of action, does not accrue to the remainderman or reversioner, until the death of the owner of the particular estate."

In *Jefferson v. Bangs,* 197 N. Y. 35, 90 N. E. 109, it was assumed that the plaintiff could have brought an action to quiet title before her right of possession accrued, but she was not required to do so to avoid the bar of the statute. To the same effect is *Groves v. Groves,* 57 Miss. 658; also, *Aiken v. Suttle,* 72 Tenn. 103, wherein it was held that the remainderman could have brought an action during the life estate to quiet title, yet she was not bound to do so until a right of possession accrued. See, also, *Duncan v. King's Admr.,* 163 Ky. 577, 174 S. W. 34, wherein it was held that the statute did not begin to run until the expiration of the life estate, although the remainderman might before that time have quieted title against an adverse claim.

Iowa had a statute, similar in language and purpose to that in Nebraska, by which an action to quiet title could be brought by a remainderman not entitled to possession. See

*Murray v. Quigley, supra.* This decision is cited and followed in *First Nat. Bank of Perry v. Pilger, supra.* It was cited and not followed in *Bohrer v. Davis, supra.* In discussing the *Murray v. Quigley* case, the supreme court of Iowa said that doubtless the remainderman might bring an action under the statute to determine questions of title, "but it does not follow that the remainderman under all circumstances is compelled to do so." *Gates v. Colfax Northern Ry. Co.,* 177 Ia. 690, 711, 159 N. W. 456, 464.

The defendant was in possession from 1920 to 1931 as the grantee of the life estate. She had a present interest and claims to have held adversely as against the plaintiff's ownership of the remainder. Restatement, above cited, states the applicable rule as follows: "* * * since the owner of the present estate is entitled to possession and the owner of the future estate is not, no adverse possession by the former against the latter is possible until the future interest becomes a present interest. It is immaterial that the present owner claims a larger interest under color of title, or informs the future owner that he claims an estate in fee simple absolute, or does both. The statutory period commences to run against the owner of the future estate as soon as such estate becomes a present interest, whether this occurs by expiration of the preceding estate by its own limitation or by the happening of some event causing the future estate to take effect as an executory interest." Restatement, Property, 905, sec. 222.

The following illustration is given: "A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B for life, remainder to C and his heirs.' B purports to transfer an estate in fee simple absolute in Blackacre to D. D believes in good faith, but erroneously, that he has an estate in fee simple absolute in Blackacre and so informs C. B dies. In an action by C against D to recover possession of Blackacre the statutory period is computed from the date of B's death." Restatement, *supra,* 906.

See, also, 2 C. J. 161; 2 C. J. S. 669; 1 Am. Jur. 805, sec. 25, 860, sec. 121; 1 R. C. L. 743, sec. 63; 3 Thompson, Real

Property, 658, sec. 2536; Warvelle, Ejectment, 505, sec. 452; Tyler, Ejectment and Adverse Enjoyment, 946.

Cases holding that neither a life tenant, nor his grantee in a deed conveying the absolute title, can hold adversely, during the life of the life tenant, as against the remainderman, are based upon the proposition that the remainderman does not have a right of entry and possession during the existence of the life estate. Adverse possession begins to run when a right of entry and a right of possession exist in the remainderman and not when the remainderman has a right to bring an action to quiet title as to his future interest. *Maring v. Meeker,* 263 Ill. 136, 105 N. E. 31; *Cassem v. Prindle,* 258 Ill. 11, 101 N. E. 241 (holding that possession is adverse to the world except the remainderman) ; *Ashbaugh v. Wright,* 152 Minn. 57, 188 N. W. 157 (citing *Bohrer v. Davis, supra*) ; *Content v. Dalton,* 121 N. J. Eq. 391, 190 Atl. 328; *Id.* 122 N. J. Eq. 425, 194 Atl. 286; *Akley v. Bassett,* 189 Cal. 625, 209 Pac. 576; *Newport v. Hatton,* 195 Cal. 132, 231 Pac. 987; *Hooper v. Leavitt,* 109 Me. 70, 82 Atl. 547; *Boggess v. Crail,* 224 Ky. 97, 5 S. W. (2d) 906; *Smith v. Maberry,* 148 Ark. 216, 229 S. W. 718; *May v. Chesapeake & O. Ry. Co.,* 184 Ky. 493, 212 S. W. 131; *Farmer v. Reed,* 335 Ill. 156, 166 N. E. 498; *Daley v. Daley,* 14 N. E. (2d) (Mass.) 113; *Webster v. Railroad Co.,* 78 Ohio St. 87, 84 N. E. 592; *Cross v. Janes,* 327 Ill. 538, 158 N. E. 694.

We therefore conclude that plaintiff's cause of action did not accrue so as to begin the running of the statute of limitations until she had a right of entry and possession, which in this instance began with the death of her father in 1931, and that plaintiff's action is not barred. All decisions of this court in conflict herewith are overruled so far as the determination of the issues of this case requires.

We have examined the additional assignments of error and find no reason for disturbing the holding of the trial court thereon.

AFFIRMED.

JOHNSEN, J., dissenting.

The decision in this case is in conflict with the rule an-

nounced in *Criswell v. Criswell,* 101 Neb. 349, 163 N. W. 302, L. R. A. 1917E, 1103, and what has been regarded as the settled law of this state since that case was decided. While the court has the right to change the rule and to bring Nebraska into line with the majority of other states, such change should not be permitted to affect title rights that have fully ripened while the rule in *Criswell v. Criswell* was in effect.

Since the remedy provided by section 76-401, Comp. St. 1929, does not distinguish between adverse possession by a total stranger and that by a life tenant or his privies, the rules announced in the fourth and fifth syllabus points necessarily must be construed to mean that a remainderman is not obliged, under any circumstances, to take steps to protect his estate against the running of the statute of limitations, until after the death of the life tenant. But more than this, the effect of the decision is that the court refuses to recognize and enforce rights that have ripened under our former decisions, by ten years completed adverse possession prior to the adoption of the opinion in this case. It is the latter position especially to which I object.